(Decided 11th January, 1884.)

GEORGE F. GIBNEY *vs.* LAWRENCE L. CURTIS. LAWRENCE L. CURTIS *vs.* GEORGE F. GIBNEY.

*Action on a Contract for the Sale of Barley—Usage—Inadmissible Evidence—Res inter alios acta—Irrelevant Evidence.*

A contract between G. of Baltimore and C. in the State of New York, in relation to a sale of barley by G. for C. was contained in a letter from G. to C. in which he writes: we have "sold your ten thousand to net you your price, 87 cents, which we consider a good sale.

Gibney *vs.* Curtis.

We sold it by average sample, to be like last shipments. Now, when you ship this barley, would like you to do as all our other customers do, say, *draw five days drafts on us, we accept same and pay them when due,* giving barley time to get here, and get up account when draft becomes due. By so doing you will oblige us." At the trial of an action growing out of this contract, G. offered to prove that when a sale of grain in quantities of a thousand bushels and more, is made to a merchant in the City of Baltimore, to be delivered within a limited time, and after such sale, and before the delivery of the whole, grain advances in price, there is a uniform, well established custom in that city, which permits the vendee to exact a *reasonable* sum of money, as margin, from the vendor, if none of the grain has been delivered; and if part has been delivered such custom enables the vendee to retain in his hands a *reasonable* sum of money, the proceeds of sales made, as margin or security for future deliveries. And he offered to prove a similar custom in relation to the dealings between an agent or factor and his principal. HELD:

1st. That the proffered evidence was inadmissible.

2nd. That G. was bound by an express term of the contract, to account and pay for the barley as received from C., immediately after the expiration of five days from the receipt of the evidence of the consignment, or actual receipt of the barley.

3rd. That no evidence of custom or usage was admissible to alter or modify this express provision of the contract.

4th. That the terms of the contract were neither ambiguous nor technical, and therefore did not require the aid of any established custom or usage to ascertain their true meaning.

5th. That usage may in certain cases, for the purpose of ascertaining the meaning and intention of the parties to a contract, whether written or verbal, be proved; but it is never admissible where it is inconsistent with the terms of the contract, or the apparent intention of the parties.

6th. That if this were a case for the admission of evidence of usage, the usage offered to be proved furnished no rule by which a reasonable margin might be determined, and for that reason the evidence of such usage was inadmissible.

G. offered to prove that sometime before the contract between C. and himself in respect to the ten thousand bushels of barley, C. had

contracted to sell the same barley to D. for eighty-one cents per bushel, HELD:

That this evidence was inadmissible, as being *res inter alios acta*, and wholly irrelevant.

APPEALS from the Court of Common Pleas.

These cases were before this Court on the former appeals of *Curtis vs. Gibney*, 59 *Md.*, 131, and the nature of the cases, and the facts as then presented, are fully stated in that case. The additional features of the cases as now presented, are stated in the opinion of the Court.

*First Exception.*—At the trial George F. Gibney, as plaintiff in the first case, and as defendant in the second case, offered to prove the following custom:

"When a sale of grain in quantities of a thousand bushels and more is made to a merchant in Baltimore City, to be delivered within a limited time, and after such sale, and before delivery of the whole, and grain advances in price, then there is a uniform, well established, well known custom of long standing in Baltimore City, which permits the vendee to exact a reasonable sum of money, as margin, from the vendor, if none of the grain has been delivered, and which enables the vendee, if some of the grain has been delivered, to retain in his hands a reasonable sum of money, and of the sales of grain delivered as margins."

Curtis, as defendant in the first case, and as plaintiff in the second case, objected to this evidence, and the Court, (BROWN, J.,) sustained the objection. Gibney excepted.

*Second Exception.*—Gibney then offered to prove the following custom:

"When a factor or agent sells grain in his own name for his principal, to be delivered within a reasonable time, and after such sale, and before delivery of the whole by the principal, grain advances in price, then there is a uniform, well established, well known custom of long standing in Baltimore City, which permits the agent or factor to exact

a reasonable sum of money from his principal as margin, if none of the grain has been delivered, and which permits him if some of the grain has been delivered, to retain in his hands a reasonable sum of money, and of the sales of grain delivered, as margins."

Curtis objected to the testimony, and the Court sustained the objection. Gibney excepted.

*Third Exception.*—Gibney then offered to prove the following facts:

That Curtis, party to these cases, made the following contract in writing with Francis Denmead:

"I hereby agree to furnish Francis Denmead, of Baltimore, ten thousand bushels (10,000) of sound New York State barley, of good color and weight, not less than 48 lbs. to the bushel, at eighty-one cents per bushel, delivered in sacks in Baltimore City; barley to be shipped between September 15th, and October 15th, 1880.

"Signed:     L. L. CURTIS,<br>"Horseheads, N. Y."

That Gibney heard of this contract for the first time, after the three cars of barley on the 10,000 contract had been sent to Gibney. Further, that Curtis was, at the time of the transaction in this case, and is now a man of no pecuniary responsibility; that Gibney knew nothing concerning Curtis until after said three car-loads were delivered; that without cause, Curtis refused and declined to deliver any barley to Denmead under said contract, and the 10,000 bushels mentioned in the case, is the same as that sold to Denmead.

And further, that after said three cars were delivered, Curtis denied having any contract with Gibney to deliver any more barley, and that Gibney had no redress, except by returning the moneys of Curtis, which were in his, Gibney's hands.

This testimony was objected to by Curtis, and the Court sustained the objection. Gibney excepted.

*Fourth Exception.*—Gibney offered the following prayer:

"Gibney is entitled to a verdict in both cases, if during the month of November, 1880, after he refused to remit for the three cars of barley Curtis sold, or could have sold the balance of the ten thousand bushels of barley for a sum of money which would net him above 87 cents per bushel, a sum in excess of the amount involved in the two cases before the jury."

And Curtis offered the two following prayers, the first in the case in which he was plaintiff, and the second in the case in which he was defendant:

1. If the jury find, that on or about the 17th and 18th of November, the plaintiff, Curtis, shipped to the defendant, Gibney, at Baltimore, three car loads of barley, and about the same time, drew upon him the two drafts offered in evidence, for $1414.23 and $147.54, respectively, the railroad receipts for said three cars being attached to the draft for $1,414.23, and the said drafts were duly presented for payment and dishonored, and that the several letters, postal cards and telegrams offered in evidence, passed between the said Curtis and Gibney, on or about their respective dates, then the failure and refusal of said Gibney to remit to said Curtis the price of said three car loads of barley received by him, relieved the said Curtis from any obligation to ship to said Gibney the remainder of the 10,000 bushels of barley so ordered by him, and the said Curtis is entitled to recover in this action the price of the three car loads of barley as agreed on by the parties, (less the $125.67, paid by said Gibney for freight,) with interest thereon, in the discretion of the jury, from November 24th, 1880, and also the additional sum of $147.54 admitted to be due upon the previous transactions, in said Gibney's letter of November 17th, 1880, with interest thereon in the discretion of the jury, from the said 17th of November, 1880.

2. If the jury shall find a verdict for the plaintiff in the case of Curtis against Gibney, which is also submitted to

them at the same time with this case, then their verdict must also be for said Curtis, the defendant in this case.

The Court rejected the prayer offered by Gibney, and granted the two prayers offered by Curtis. Gibney excepted, and the verdict and judgment in each case being rendered against him, appealed.

The causes were argued before ALVEY, C. J., ROBINSON, IRVING, and BRYAN, J.

*Sebastian Brown*, for George F. Gibney.

*William Reynolds*, for Lawrence L. Curtis.

ALVEY, C. J., delivered the opinion of the Court.

When this case was here before on the appeal of the present appellee Curtis, (59 *Md.*, 131,) and on very much the same state of record as the present appeal, this Court held, that in regard to the 10,000 bushels of barley, the subject-matter of the present contention, the contract between the parties, as evidenced by the correspondence, was that Gibney bound himself to pay to Curtis 87 cents per bushel net for the barley, and to accept and pay the drafts of the latter, at five days, for the same, without regard to the sale of the barley made by him to Strauss, or the prices or terms of payment as agreed on between himself and Strauss. It was also held, that, assuming that the contract with Strauss was made by Gibney as agent or factor, and that Curtis dealt with him in that capacity only, he had no legal right to retain the money of Curtis as a margin or security for the performance of the contract on the part of Curtis, there being no such stipulation in the contract, and no evidence of any custom or usage binding on Curtis to justify it. It was further held, that Gibney's failure to remit to Curtis the proceeds in his hands arising from the sale of the barley, according to the

terms of his contract with Curtis, the latter was not bound to make further consignments of the 10,000 bushels of barley to the former ; and that, consequently, Curtis could not be held liable for the loss incurred by Gibney growing out of the sale to Strauss.

The Court, in considering the question whether Gibney was acting in the transaction as agent or factor, or whether he dealt with Curtis as vendee of the barley, refer approvingly to the case of *White, Exparte, L. R.,* 6 *Ch. App.,* 397. In that case it was held by the English Court of Appeal, that a person to whom goods are consigned to be sold, and who is at liberty to sell them at any price and on any terms he pleases, he paying a fixed price for them to the owner, is not an agent, but a vendee. And this Court, after referring to that case, and quoting a passage from the opinion of one of the Lord Justices, proceed to say :

"We consider these to be sound views, and if applied to the cases before us, they would be conclusive against the rights now claimed by the appellee, Gibney ; but it is not necessary for us to rest our decision on that ground. Assuming that the contract with Strauss was made by the appellee as agent or factor, and that the appellant dealt with him in that capacity only, it is very clear that he had no legal right to retain the money of the appellant, as a margin or security for the performance of the contract on the part of the appellant, Curtis. Such a stipulation is not found in the contract, and there is no evidence of any custom binding upon the appellant to justify it. It is equally clear that upon his failure to remit to the appellant the proceeds in his hands, arising from the sale of the barley, according to the terms of his contract with the appellant, the latter was not bound to make further consignments to him." And in support of this latter proposition are cited several authorities, among which is the case of *Withers vs. Reynolds,* 2 *B. & Ad.,* 882, in which

one person agreed to supply another with straw to be delivered at the latter's premises, at the rate of three loads in a fortnight, during a specified time ; and the purchaser agreed to pay a certain sum per load for each load of straw so delivered on his premises, during the specified period. After the straw had been supplied for some time the purchaser refused to pay for the last load delivered, and insisted on always keeping one payment in arrear.    But the Court of King's Bench held, that, according to the true effect of the agreement, each load was to be paid for on delivery, and that on the purchaser's refusal so to pay for the straw as delivered, the seller was not bound to send any more.    And that case was approved and followed in the recent case of *Bloomer vs. Bernstein, et al., L. R.,* 9 *C. P.,* 588.

In the case before us, Gibney, the present appellant, positively refused to remit the proceeds of the sale of the three car loads of the barley received by him, but claimed to hold the same as margin or security for future deliveries by Curtis.    This it was held on the former appeal, as we have already stated, Gibney was not warranted in doing by the terms of the contract under which he received the barley from Curtis.

On the reversal of the judgments and remanding the cases for new trials, Gibney obtained leave and amended the declaration in his case against Curtis ; and he inserted an additional count, whereby he declared that he, the plaintiff, purchased of the defendant, at a fixed price, ten thousand bushels of barley, to be delivered in Baltimore by the defendant, and to be paid for in a limited time, according to the custom of the business of buying and selling grain ; and that, after the purchase, barley advanced in price, and the plaintiff offered, and was willing to pay the purchase money within the time limited, in accordance with the custom of the business of buying and selling grain, but the defendant refused to deliver the barley so contracted to be delivered.

The contract for the delivery of the barley is contained in the letter of Gibney to Curtis, of the 10th of Nov. 1880, subsequently adopted by Curtis, and in which there is no reference to custom whatever.   By this letter Gibney said to Curtis, We have "sold your ten thousand to net you your price, 87 cents, which we consider a good sale.   We sold it by average sample, to be like last shipments.   Now, when you ship this barley, would like you to do as all our other customers do, say, *draw five day drafts on us, we accept same and pay them when due*, giving barley time to get here, and get up account, when draft becomes due. By so doing you will oblige us."   59 *Md.*, 137.   This is the contract that was construed by this Court on the former appeal, and which, by its terms, was held to entitle Curtis to full payment for the barley, at the price agreed on, as the barley was delivered to Gibney.

At the trial on the remand of the cases, Gibney, in support of his contention as to the meaning of the contract, and to avoid the construction thereof adopted by this Court, offered to prove that when a sale of grain, in quantities of 1000 bushels and more, is made to a merchant in the City of Baltimore, to be delivered within a limited time, and after such sale, and before delivery of the whole, grain advances in price, there is a uniform, well established custom in that city, which permits the vendee to exact a *reasonable* sum of money, as margin, from the vendor, if none of the grain has been delivered ; and if part has been delivered, such custom enables the vendee to retain in his hands a *reasonable* sum of money, the proceeds of sales made, as margin or security for future deliveries.   There was an offer to prove a similar custom in relation to the dealing between an agent or factor and his principal. These offers the Court below rejected ; and that ruling forms the principal ground of the present appeal.

Without reference to the manner in which the proffer of the proof was made, this Court is decidedly of opinion that

the Court below was correct in its ruling. As we have seen, the contract, in respect to the mode and time of payment for the barley that might be consigned to the appellant, Gibney, was, that he should pay for it as delivered, by the acceptance of five day drafts, to be paid when due. This was an express term of the contract, without any reservation or qualification whatever. The appellant was therefore bound to account and pay for the barley as received from the appellee, immediately after the expiration of five days from the receipt of the evidence of the consignment, or actual receipt of the barley. No evidence of custom or usage was admissible to alter or modify this express provision of the contract. The purpose of the evidence of custom was to incorporate an additional provision or term in the contract, and that too in respect to a matter for which the contract had expressly provided. The terms of the contract are neither ambiguous nor technical, and therefore did not require the aid of any established custom or usage to ascertain their true meaning. Usage may, in certain cases, for the purpose of ascertaining and explaining the meaning and intention of the parties to a contract, whether written or verbal, be proved ; but it is never admissible where it is inconsistent with the terms of the contract, or the apparent intention of the parties. As has been well said, usage may be admissible to explain what is doubtful, but never to contradict what is plain. In the case of *Oelricks vs. Ford,* 23 *How.,* 49, and in a similar case between the same parties, in 21 *Md.,* 489, there were written contracts for the delivery of a certain number of barrels of flour at a given price, deliverable within a specified time, at the seller's option. The purchasers made proffer of evidence to prove the existence of an usage whereby they might call for a *reasonable* amount of money to be put up as margin, to secure the punctual delivery of the flour within the time specified. But, in both of those cases, it was held, first, that the evidence offered was too

indefinite and conflicting to establish the existence of any certain and uniform usage in the trade; and, secondly, that, assuming the existence of the usage attempted to be shown, the evidence was inadmissible to affect the construction of the contracts, there being no ambiguity or doubt in the terms of the writing. Those cases were well considered, and they would seem to be quite conclusive of the present. See, also, case of *Barnard vs. Kellogg,* 10 *Wall.,* 383, 390.

By the proffer made in this case, the appellant proposed to show, that, by the usage, the vendee of grain is permitted to exact of the vendor a *reasonable* sum of money, as margin, or to retain in his hands a *reasonable* sum, as margin, to secure future deliveries. But the difficulty is, if this were a case for the admission of evidence of usage, that the usage offered to be proved furnishes no rule by which a reasonable margin may be determined. What a jury in one case might consider reasonable, another jury in a similar case might consider very unreasonable. It is essential to the validity of an usage, that it be uniform and certain. The usage in question would seem to be liable to great variation in the amount of the margin allowed to be demanded. Strauss, the purchaser of the 10,000 bushels of barley from the appellant, demanded and received of the latter a margin of $600, in the form of a note; while the appellant claims the right to retain in his hands, as margin or security from the appellee, under the same usage, the sum of $1,496.46 for the delivery of the remainder of the same 10,000 bushels of barley. This would certainly not indicate either uniformity or certainty in the application of the supposed usage. In no aspect, therefore, in which the proffered evidence of usage could be considered, would it be admissible.

The offer to prove that sometime before the contract between the appellant and appellee in respect of the 10,000 bushels of barley, the latter had contracted to sell the

same barley to Denmead for 81 cents per bushel, was properly rejected, as being *res inter alios acta*, and wholly irrelevant. The contract with Denmead may have been abandoned or rescinded, or, for aught that appears, may have been fulfilled by the delivery of other 10,000 bushels of barley. The Court below was clearly right in rejecting the evidence. And as to the prayers ruled upon by the Court, we discover no error in refusing the one offered by the appellant, nor in granting the two offered by the appellee. We must, therefore, affirm the judgments.

*Judgments affirmed.*

(Decided 11th January, 1884.)