# C. DEVERAUX JARRETT

*vs.*

## J. STAUM & SONS COMPANY.

*Sale of Goods—Inspection on Arrival—Evidence of Usage.*

Where several carloads of onions were sold, "subject to inspection" at the place of destination, evidence was not admissible to show a custom or usage of the trade as to the time within which, after the arrival of perishable articles, they must be inspected for the purpose of acceptance or rejection.   p. 220

A custom or usage, followed merely at a certain railroad yard, and not even extending to other terminals in the same city, and not shown to be within the cognizance of the vendor of goods, *held* not admissible in his favor, in an action for the price of the goods.   p. 220

*Decided March 19th, 1921.*

Appeal from the Superior Court of Baltimore City (SOPER, C. J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, STOCKBRIDGE, and OFFUTT, JJ.

*Clifton S. Brown,* with whom was *James C. Murphy* on the brief, for the appellant.

*Abram C. Joseph,* with whom were *Daniel C. Joseph* and *John R. M. Staum* on the brief, for the appellee.

STOCKBRIDGE, J., delivered the opinion of the court.

This case originated in a contract for the sale of five carloads of Bermuda onions, dated the 11th May, 1917. The vendor was represented by Howeth Brothers of Baltimore,

acting for and on behalf of Colonel Deveraux Jarrett of Laredo, Texas, and the vendees were J. Staum & Sons Co. of Baltimore.

The character and terms of the contract appear from the following letter:

"Baltimore, Md., May 11th, 1917.

"Howeth Bros.,

"Market Space, City.

"Gentlemen:·

"We beg leave to confirm conversation of our Mr. George T. Ames with you over the 'phone today in reference to the purchase of 5 cars of good, bright, yellow, No. 1 onions, at $1.55 a crate, f. o. b. Texas. Said onions subject to inspection here.

"It is agreed that three of these cars are now in transit, that one has been shipped today, and the fifth will be shipped tomorrow (May 12).

"Very truly yours,

"J. Staum & Sons Co."

The vendor expressed a desire to have $200 on each car remitted to a certain bank in Laredo, Texas, and Mr. Ames, the salesman for the vendee firm, and who had negotiated the purchase, declined to place the money in Laredo, but said: "I will put $1,000 in your (Howeth's) hands and leave it up to your inspection, you representing Jarrett," which he did. He further said: "Your inspection is good enough for me and if you pass on them as all right, I will accept the onions." Thereupon Howeth wrote to Jarrett, and the last named confirmed the sale on the basis stated.

The cars were loaded in Texas on the 8th and 9th of May, 1917, and arrived in Baltimore May 22nd, and the consignee was notified of the arrival on May 24th. The witness Howeth also testified that he did not know "when any of the cars arrived in Baltimore; that he only heard of the bad condition of the car in controversy after it had been inspected by Staum; that after this inspection he inspected the onions,

the occasion being when he had purchased some onions from the defendant and had gone to Bolton yards for the purpose of getting them."

After this inspection Mr. Howeth telegraphed to Mr. Jarrett as follows:

"C. D. Jarrett Co.,

"Laredo, Texas.

"Car U. T. R. No. 30008 onions here, badly decayed; Staum refused to handle at any price. We prefer not selling it, as we believe it will hardly bring freight; advise.

"Howeth Bros."

It also appeared from the cross-examination of this witness that he was the broker in Baltimore for Jarrett & Co.

Evidence was taken in Texas of the men who loaded the cars, to the effect that the onions were in good condition when loaded and shipped.

Seven exceptions were reserved during the trial; the first six of them all relate to an endeavor on the part of the plaintiff to establish a custom or usage of the trade as to the time within which, after the arrival of perishable articles, the same must be inspected for the purposes of acceptance or rejection.

As each of these successive attempts was made to introduce evidence for the purpose of showing custom or usage, the same was objected to, and those objections were sustained by the judge of the trial court.

"Although evidence of usage is sometime admissible to add to or explain the terms of an agreement, yet it will never be permitted to vary or contradict the clear and manifest signification of the terms which the contracting parties may think proper to employ to express their meaning, * * * nor is evidence of usage admissible to alter a general principle or rule of law, and upon a fixed state of facts to make the legal right or liabilities of the parties other than they are by the common law." *Foley* v. *Mason,* 6 Md. 49.

In any case a usage to be admissible must be proved to be known to the parties, and to be so general and well established that knowledge and adoption of it may be presumed, and it must be certain and uniform. 10 *R. C. L.* 1049; *Porter* v. *Gill,* 114 Mass. 110; *Marshall* v. *Perry,* 67 Me. 78; *Auto Mfg. Co.* v. *Merchants Natl. Bank,* 116 Md. 179.

In *German Savings Bank* v. *Renshaw,* 78 Md. 488; it is said that "no evidence of usage is admissible which would destroy a contract; usage can be admitted to interpret the language of a contract where it is obscure, but not to change its legal character or derogate from the rights of the parties, or authorize acts contrary to its provisions," citing *Rich* v. *Boyce,* 39 Md. 314 and *Kraft* v. *Fancher,* 44 Md. 215.

By the express terms of the sale in this case the onions were to be *subject to inspection* on arrival in Baltimore. There is no doubt whatever as to the meaning of that language, and so far as any of the witnesses who attempted to testify on that point was concerned, the evidence went only to the custom followed at the Bolton yards, not even extending to other terminals in the city, and not shown to be within the cognizance of Jarrett.

The general right of inspection within a reasonable time, of goods of a similar character, came before the Supreme Court of Michigan in *Jones* v. *Bloomgarden,* 143 Mich. 335, where the question arose in the case of a carload of beans, but the evidence in that case was directed rather to the point of a reasonable time, than of a local usage or custom.

In the case of *Chesapeake Bank* v. *Swain,* 29 Md. 483, parol evidence of a general usage among the banks of Baltimore was admitted, but in that case, it abundantly appears from the opinion of JUDGE ALVEY, there was an ambiguity which took that case out from the general rule.

*The Standard Milling Co.* v. *De Pass,* 154 App. Div. 525, 139 N. Y. Sup. 611, arose out of a purchase of rice, and in which agreement the right of examination was expressly reserved, just as in this case. The proposed vendee in that case

did examine the rice and rejected the same, and it was there held that no title to the rice passed from the vendor to the vendee by reason of the reservation.

In this condition of the proof of the case, the ruling of the trial court taking the case from the consideration of the jury, and directing a verdict for the defendant, as was done, forming the seventh bill of exceptions, was entirely correct, and the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*