TRAVELERS INSURANCE COMPANY *v.* EDWIN C. HERMANN.

[No. 57, October Term, 1927.]

*Decided January 11th, 1928.*

The cause was argued before BOND, C. J., ADKINS, URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Chester F. Morrow* and *Isidor Blum,* for the appellant.

*Walter L. Clark,* with whom were *Roszel C. Thomsen* and *Charles G. Page* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

On the 9th day of February, 1920, Edwin C. Hermann was employed under a written contract by the Travelers Insurance Company, of Hartford, Connecticut, hereafter referred to as the company, as a soliciting agent to solicit and transact life, accident, and health insurance. For such services the company agreed to pay him commissions on original policies issued through him, in accordance with a schedule of rates included in the contract, and five per cent. on renewal premiums on policies of life insurance originally issued through his efforts, on which one year's premium had been paid and where the business was satisfactory to the company. That agreement, so far as it relates to the commission on renewal premiums, provided, however, that the agent should not be entitled to such premiums, if (1) the agent left the service of the company and endeavored to take an agent from its service, or induced one of its policy holders to relinquish a policy in the company, or (2) if within one year from the termination of the contract he entered the employ of any other life insurance company to work in the territory described as "Baltimore and vicinity (Maryland)," or (3) if he had violated any of his obligations under the contract.

It also provided that either party might terminate it upon seven days' notice.

Herman remained in the company's employ until November 22nd, 1924, when he resigned. His resignation was accepted by the company to become effective on December 15th, 1924, and his employment as its agent ceased on that day. Before he left the company, he had one of its employees make a list of persons holding policies which he had written, from a book which he had, and he sent a copy of the following letter to each person named on that list:

"You have received a letter from Messrs. Apple & Bond, advising you of my resignation as of December 15.

"I resigned, because I was offered a general agency of the Missouri State Life Insurance Company of Saint Louis, Missouri. A company with over five hundred million dollars of insurance in force and with rates equal to those of any other company.

"For five years I have sought just such an opportunity as the Missouri State Life Insurance Company offered me. From time to time I advised the management of the Travelers Insurance Company of my desires, and they repeatedly assured me that when the opportunity presented itself I would have their cooperation, and that the renewals on the business I had and was continuing to put on their books would be paid to me as though I was still in their employ, providing I would co-operate in the collection of the same; this I willingly and anxiously agreed to do in my resignation.

"The management, in accepting my resignation, instead of living up to their repeated promises, curtly and emphatically advised me I would have to live up to the contract, which contains a one-year clause prohibiting me from soliciting insurance in this territory.

"I want you and all my policy holders to know how much I appreciate the business that you have given me, and while I cannot render you the personal service I would have been able to, had Messrs. Apple & Bond lived up to their verbal agreement with me, I

can assure you that, while I am on probation, should anything come up pertaining to the insurance you have purchased from the Travelers through me or any new insurance you may wish to consider, I can arrange to have a man call on you who will be glad to attend to your every want."

At that time he had no regular connection with the Missouri State Life Insurance Company, although he wrote some insurance for it under a license which authorized him to write insurance for it in the City of Washington, and which had been issued in the preceding May. That license as originally issued authorized him to do "surplus and substandard" business for the Missouri company in "Baltimore and vicinity" as well as any "general business" in Washington. When he resigned from the company, he notified it that he had cancelled his license to do "surplus and substandard business" for the Missouri company in Baltimore and vicinity, but (although it does not appear that he so notified the company) he still retained his authority to do any general business for it in Washington. When he left the Travelers' Company he gave up his Baltimore office, but kept a desk in the office of Mr. George Lilly, an agent of the Missouri Company, in the Fidelity Building in Baltimore.

During his connection with the company, he had written a number of life insurance policies on which renewal premiums were paid after he had left its employ, and he claimed the right to a five per cent. commission on such premiums under the following clause in his contract: "If this contract shall be terminated after the agent has been continuously in the service of the company under this or any previous contract for two or more years, or shall be terminated by the death of the agent, and if the agent has not violated any of his obligations hereunder, the company will pay the renewal commissions earned under part 2, to the agent, his executors, or administrators, or to such person as he may designate with the consent of the company."

The company paid him his commissions on renewal pre-

miums on insurance which he had written until April, 1925, when they stopped. He thereupon demanded that they continue to pay such commissions, but they refused, and on March 29th, 1926, he brought this action to recover the commissions which he then claimed to be due him, which resulted in a judgment in his favor for $1,438.35, from which this appeal was taken.

There are four exceptions in the record, one relating to the prayers and three to rulings on questions of evidence.

The appellee's contract with the company contained the following clauses relating to his right to collect commissions on renewal premiums:

"If the agent shall leave the service of the company and endeavor to take an agent of the company away from its service, or shall induce a policy holder to relinquish a policy or policies in the company, the agent shall forfeit any interest in commissions that he might otherwise be entitled to under this or previous contracts.

"No assignment of commissions earned or accrued or to accrue under this contract shall be valid unless authorized in writing by the company. * * *

"If the agent shall at any time within one year from date of the termination of this contract for any cause whatsoever enter the employment of any other life insurance company to work in the territory specified in section 1, all right to further commission on renewal premiums shall cease with the date of such employment."

And the appellant's contention is that the evidence in this case conclusively proves that Hermann did induce persons holding policies issued by it to relinquish the same, and that he did take employment "to work in the territory specified in section No. 1," to wit, in "Baltimore and vicinity (Maryland)," and that therefore he was not entitled to commissions on renewal premiums which otherwise would have been due him. In connection with both of these issues, the appellant offered the testimony of Captain C. C. Canon, who testified

in chief that Hermann, accompanied by Lilly, had visited him in March, 1925, and that, as he had a policy with the Travelers Insurance Company expiring at about that time, he gave Hermann an application for a policy with the company with which Hermann was then employed, and that he also gave Hermann a check for forty dollars in payment of the premium on that policy. He also said, on his cross-examination, that he had a $4,000 life insurance policy which Hermann had written for the Travelers Insurance Company, which he "dropped." He was then asked, "Well, you dropped that at the instance of Mr. Rhodes with the Travelers?" The court overruled an objection to that question and that ruling is the subject of the first exception. While the witness had said nothing in chief about life insurance, it appears from his subsequent cross-examination that the purpose of the question was to ascertain whether the forty dollars check may not have been given in payment of the balance due on an old note for a life insurance premium. Such an inquiry was germane to the witness' testimony in chief, was relevant and material, and we find no error in that ruling.

Jacob L. Idov was called by the defendant, apparently to prove that he had taken out a life insurance policy in the Missouri State Life Insurance Company through Hermann within the year next ensuing after December 15th, 1924, but he denied point blank that he had ever seen Hermann in connection with any insurance matter within that period. He was then asked: "Did you, on July 30th, 1925, make to the Travelers Insurance Company this statement: 'When I bought policy No. 515176 in the Missouri State Life Insurance Company, I intended to lapse No. 919197, but desire to apply for re-instatement and borrow full loan value on the policy. At the time I bought Missouri State policy from Mr. E. C. Hermann, I informed Mr. Hermann I intended to drop Travelers Insurance policy but I now desire to continue same.' Did you make that written statement?" He answered that he did not write the statement, but that it was dictated and he signed his name. He further testified that the letter was written by Mr. Ottenheimer and dictated by

Mr. Apple (agents of the appellant), and that he was induced to sign it under protest; that Apple told him that there was some money due him on a policy but that he could not get it unless he signed the letter; that he did sign the letter and afterwards a check for fifty or fifty-five dollars was sent him. He further testified that he did not give Apple and Ottenheimer the facts from which they dictated the letter, and that, although he protested repeatedly, he was told that he could not get the money without signing his name, "because the company needs this"; that he did not tell Apple anything, but that he "made this letter up."

Ottenheimer was then called and, after testifying that Idov had made a statement to him on July 30th, 1925, with regard to a policy of insurance in the Missouri State Life Insurance Company, was asked what statement he made on that date. An objection to that question was sustained, and the witness was then asked whether on that occasion Idov had made "a statement to you which you reduced to writing in his presence, by which he said that he had bought policy No. 515176 in the Missouri State Life Insurance Company, and that when he bought the policy he intended to lapse No. 919197 in the Travelers Insurance Company, but now desired to apply for reinstatement and to borrow the full loan value on the Travelers policy; that at the time he bought the Missouri State policy from Mr. E. C. Hermann, he informed Mr. Hermann that he intended to drop the Travelers policy, but he now desired to continue the same." An objection to that question was also sustained and those rulings are the subject of the second and third exceptions. The appellant contends that it was surprised by the testimony of the witness, and that these questions were admissible, not to impeach him, but to explain why it called him. *Murphy v. State,* 120 Md. 234; *Wash., B. & A. Elec. R. Co. v. Faulkner,* 137 Md. 451. The appellee on the other hand says that such evidence could only have been admitted to explain the surprise occasioned by the witness' testimony, and that, since Idov had on the stand admitted that he had made a contradictory statement, he admitted the only thing which appellant was entitled to

prove, and that therefore the testimony was unnecessary and immaterial. But an examination of Idov's testimony shows that he had made no such admission. What he admitted was signing the letter, but he emphatically denied making the statement, but on the contrary said that Apple "made the statement up" and that he signed it to get fifty or fifty-five dollars. The statement was wholly at variance with his sworn testimony, and if in fact he had made it, appellant was entitled to show that fact, to explain why it called him, if it was injured by his testimony. It would be grossly unfair to permit a witness to entrap a party into calling him by making a statement favorable to that party's contention, and then, when he is called and accredited by that party and gives testimony at variance with his previous statement and against that party's interest, to deny the party calling him the right to show that he was induced to do so by a previous statement of the witness, made under such circumstances as to warrant a reasonable belief that the witness would repeat the statement when called to testify. *Murphy vs. State, supra; Wash., B. & A. Elec. R. Co. v. Faulkner, supra; Smith v. Briscoe,* 65 Md. 569. These cases limit the right of the party claiming to be surprised to the proof of statements made to the party calling him or his attorney, but where a corporation is a party, manifestly a statement made to its agent is within the rule, because necessarily a corporation can only act through an agent, and any other construction would in most cases deprive corporate defendants of the protection which the rule affords. It is not "every statement that may be made even to the party litigant or his attorney, that should be allowed to be contradicted by the party calling the witness. It should be left to the discretion of the judge before whom the case is tried below to allow it to be done. The court should be satisfied that the party has been taken by surprise, and that the evidence is contrary to what he had just cause to expect from the witness based upon his statements, and that such statements were about material facts in the case. It is not every light or trivial circumstance that would justify it." *Smith v. Briscoe, supra.* And it must appear too that

the evidence of the witness is prejudicial to the party calling him, and it is not sufficient to show that it is not beneficial to him, or that it disappoints his expectations, even though justified. 28 *R. C. L.* 646. Applying these principles to the issue before us, we are unable to find any error in these rulings. Idov's testimony was wholly negative, in so far as it related to the issues in the case. He did, indeed, according to his statement on cross-examination, say that defendant's agents paid him to make a false statement, but these questions did not refer to that circumstance. And aside from that statement, which is not involved in these rulings, he said nothing which could have hurt the appellant's case, but the most which could be said of his testimony was that it did not help it.

The remaining exception involves the rulings on the prayers. The most important question presented by this exception is raised by the refusal of the appellant's first prayer, which was a formal demurrer to the evidence. It is based upon these propositions: (1) that by a true construction of Hermann's contract of employment with the company, he was not entitled to recover (a) if within one year from the termination of his employment by the company he sold any insurance to persons living "in Baltimore and vicinity," whether the transaction took place in that territory or not, or (b) if he induced any person holding a policy in the company to relinquish it; and (2) that the undisputed evidence shows that he did sell insurance to persons living in Baltimore and vicinity, and that the transactions incident thereto took place both within and without that territory, and that he did induce policy holders of said company to drop their policies therein, and (3) that whilst in the employ of the company he transacted insurance without appellant's consent with another company contrary to the provisions of said contract.

A cardinal rule for the interpretation of contracts is to ascertain the intention of the parties thereto. And where the words used are definite, plain, and explicit, and the meaning thereof clear, unambiguous, complete, and unmistakeable, there is no room for construction, but the parties must be held

to have meant what they said. *"Quoties in verbis nulla est ambiguitas, ibi nulla expositio contra verba fienda est."* *Coke on Litt.*, 147; *Fidelity & Deposit Co. v. Thomas,* 133 Md. 275; *Abuc Trading etc. Corp. v. Jennings,* 151 Md. 406; *Buffalo Pressed Steel Co. v. Kirwan,* 138 Md. 66. Applying this principle to the clause of the contract between Hermann and the appellant, which related to his employment by another life insurance company within one year from the date of the termination of that contract, in our opinion, the construction placed upon it by the appellant is unsound. The clause provided that the appellee's right to commissions on renewal premiums should cease if, within one year from the termination of the contract, he entered "the employment of any other life insurance company to work" in "Baltimore and vicinity (Maryland)." That language is clear, explicit, and unambiguous, and there is no reason why we should depart from it, to import into the contract a term which is not there, to wit, that he should forfeit his right to commissions on renewal premiums, if within one year from the termination of the contract he sold insurance to persons residing within the specified territory, regardless of whether or not the transaction took place within that territory, or of whether or not the appellee "worked" or solicited insurance in that territory. If the parties had intended to embody such a provision in the contract, there is no reason why they should not have done so, but since they did not, and since what they did do is perfectly clear and free from doubt, we cannot do it for them. So that reading the contract as it is written, it only prohibits Hermann from working or selling insurance for a life insurance company "in Baltimore and vicinity (Maryland)," and it is wholly immaterial whether he sold insurance in a life insurance company other than appellant to persons residing in that territory, so long as he did not enter it for that purpose, or solicit it or work therein. It is also clear from the contract that he forfeited his right to commissions on renewal premiums if he induced one holding a policy in the company to relinquish it.

The next question is whether the undisputed evidence in

the case shows conclusively (1) that Herman did work, solicit, or sell insurance in "Baltimore and vicinity (Maryland)" for a life insurance company other than the appellant, within one year from the termination of the contract, or (2) that he at any time induced a person holding a policy of insurance in the Travelers Insurance Company to relinquish it. In dealing with that question we must resolve all conflicts in favor of the appellee, and also give him the benefit of all inferences, naturally and legitimately deducible from the evidence, which support his contention. *Taxicab Co. v. Hamburger,* 146 Md. 129; *Daugherty v. Robinson, Excr.,* 143 Md. 270.

The appellee offered evidence intended to prove that he had made no contract to write insurance in Maryland for the period between December 15th, 1924, and December 15th, 1925; and that, while within that period he had written insurance on persons living in Maryland, the transactions had taken place in the city of Washington, and that he had not either worked or solicited life insurance within that period in Maryland for any insurance company other than the appellant. The appellant relies upon several specific instances in which appellee wrote insurance on residents of Maryland, which it contends controvert appellee's contention, and conclusively show that he did work and write insurance for another company in Maryland. But we cannot give any such conclusive effect to those transactions. The first two may be briefly dismissed. One was a policy issued to William R. Dougherty, now deceased, in the summer of 1925. The only evidence in the case shows that Dougherty, who lived in Baltimore, went to Hermann's office in Washington, received an application, and apparently the policy was taken out there, and there is nothing in it to indicate that Hermann solicited the insurance at all. In the second instance Hermann wrote a policy of insurance for Frank A. Hale, a resident of Baltimore, but that transaction also occurred in Washington, where Hale had gone on other business, and there is nothing which measures up to the standard of legal evidence in the record to intimate that Hermann did anything or said any-

thing in connection with that transaction outside of the City of Washington. Another instance is that of Frank S. Price, Jr., also a resident of Baltimore, for whom Hermann wrote life insurance in March, 1925, and there is evidence that that transaction also occurred in the City of Washington, and was initiated by Price. Another instance is that of a policy issued to Charles Sheets, a resident of New Market, Maryland, with a place of business in Baltimore. Sheets testified that he left a message for Hermann, by "calling up a telephone number in Baltimore," and leaving word for Hermann that he, Sheets, wanted to take out a policy, and that Hermann called on him, in Baltimore, and wrote for him an accident insurance policy in the Continental Life Insurance Company. But Hermann had previously testified that the application for that policy had been sent to him in Washington, and the policy mailed from there, and that he had not solicited any accident insurance in Maryland between December 15th, 1924 and December 15th, 1925, and the conflict was for the jury. There are other instances disclosed by the record of insurance policies written by Hermann on residents of Maryland, but in no one of them does it appear, conclusively, that Hermann did any work in Maryland in connection with them.

It also appears that, after he left appellant's employ, Hermann kept a desk in the office of Mr. George C. Lilly, agent for the Missouri State Life Insurance Company, in Baltimore, that his name was listed in the telephone directory of Baltimore, and that he wrote the letter quoted above to persons for whom he had written insurance in the Travelers Insurance Company. But he explained that testimony by saying that he had business in Baltimore in the collection of notes he had taken for insurance issued while in appellant's employment, that the listing in the telephone directory was not at his request, and, while the letter strongly suggests a bid for business, another and more innocent construction can be placed upon it. So that, resolving all conflicts in his favor, and giving the appellee the benefit of all inferences from the evidence which may naturally and legitimately be drawn

therefrom, it cannot be said as a matter of law that Hermann did solicit insurance or work for a life insurance company within the territory covered by his contract with appellant during his year of "probation."

Although the point was made, it was not pressed, that the evidence showed that as a matter of law Hermann had induced some of its policy holders to relinquish their policies with it. In disposing of that question it is sufficient to say that, while there is evidence in the case from which such an inference might very well be drawn, it is contradicted, and the conflict was a matter of fact for the jury and not a matter of law for the court.

The last point in connection with the prayer under consideration is that appellee violated his contract with appellant by working for another insurance company during the term of his employment. The contract provided that commissions should only be payable on renewal premiums "if the agent has not violated any of his obligations under it." Among the obligations he assumed were these: (1) That he would devote his "entire" time and business energies to the promotion of the interests of the appellant, and (2) that he would not without the written consent of the company directly or indirectly transact any life, accident, or health insurance for any other company. Although it does not appear that he ever had the written consent of the appellant therefor, or that it had, whilst he was in its employ, any knowledge thereof, he admitted that he did in fact, during his employment by appellant, place surplus and substandard insurance with other companies. Unexplained, that evidence would conclusively show a breach of that provision of the contract under which he agreed not to transact insurance for another company without its written consent. But the appellee undertook to avoid that result by showing that there was a general usage in the insurance business under which agents were permitted to transact with other companies business which their own companies would not take, and which was called surplus and substandard business, and in respect to that he said: "It is customary, your honor, for all insurance agents to have a

contract with another company that will probably take such business as our company would not take, both from a medical impairment standpoint, known as the substandard business, and on the surplus business, surplus business meaning business that, if an agent wrote fifty thousand dollars insurance and the Travelers limited their acceptance to twenty-five thousand dollars, every agent was always privileged to broker that business out to some other company that would take the other twenty-five thousand. All agents with all companies have that arrangement." Aside from the contract, Hermann would not have been entitled to commissions on renewal premiums. *Scott v. Travelers Ins. Co.,* 103 Md. 69; *Rosenberg v. Lipman,* 143 Md. 512. His right to such commissions, therefore, must be derived from the contract itself, and, before he was entitled to recover under it, it was incumbent upon him to show that all conditions precedent to his right to such commissions had been performed. 13 *C. J.* 763, 764; *Sunshine Cloak etc. Co. v. Roquette,* 30 N. Dak. 143, L. R. A. 1916 E. 937. Part 3 of section 11 of the contract, upon which appellee's right to commissions is based, reads as follows: "If this contract shall be terminated after the agent has been continuously in the service of the company under this or any previous contract for two or more years, or shall be terminated by the death of the agent, and if the agent has not violated any of his obligations hereunder, the company will pay the renewal commissions earned under part 2, to the agent, his executors, or administrators, or to such person as he may designate with the consent of the company." And in the third section of the contract Hermann expressly agreed "to transact all business for the company in accordance with its rules and instructions now in force or hereafter issued, and that he will not without the written consent of the company directly or indirectly transact life, accident, or health insurance for any other company." That the condition imposed by part 3 of section 11 of the contract was precedent to his right to commissions on renewal premiums paid after the termination of the contract cannot be questioned, nor can there be any doubt that, upon the

conceded evidence, he failed to comply with that condition, unless the usage to which he testified can be accepted as an excuse for failing to comply with the express terms of the contract, because he himself admitted that during the term of the contract he did transact surplus and substandard insurance in Maryland for companies other than appellant. Now while it is undoubtedly true, as stated by Judge Alvey in *Appleman v. Fisher*, 34 Md. 554, that: "As was said by Parke, B., in *Brown v. Byrne*, 3 Ell. & Bl. 713, 'in all contracts, as to the subject-matter of which known usages prevail, parties are found to proceed with the tacit assumption of these usages; they commonly reduce into writing the special particulars of their agreement, but omit to specify these known usages which are included, however, as of course, by mutual understanding; evidence, therefore, of such incidents is receivable. The contract, in truth, is partly express and in writing, partly implied or understood and unwritten. But the evidence received must not be of a particular, which is repugnant to or inconsistent with, the written contract'; and it should have been added, nor in contravention of any rule of law." It is also true that "usage may, in certain cases, for the purpose of ascertaining and explaining the meaning and intention of the parties to a contract, whether written or verbal, be proved; but it is never admissible where it is inconsistent with the terms of the contract, or the apparent intention of the parties. As has been well said, usage may be admissible to explain what is doubtful, but never to contradict what is plain." *Gibney v. Curtis*, 61 Md. 201. And the general rue is thus stated in 17 *C. J.* 508: "Where the terms of an express contract are clear and unambiguous, they cannot be varied or contradicted by evidence of custom or usage." That statement is supported by a number of Maryland cases, cited in note 46 to the text, and is certainly the law of this state. So that the only question open is whether there is here in the express terms of the contract any such obscurity or ambiguity as would make the usage to which appellee testified a valid excuse for his failure to comply with the obligations imposed by the contract.

Turning to the contract, it would be hard indeed to find any clearer or less doubtful language than that employed. Under it Hermann expressly agreed that he would not "without the written consent of the company directly or indirectly transact life, accident, or health insurance for any other company," and he also agreed to devote his "entire" time and business energies to the promotion of its interests. But under the usage which he sets up, he was not obliged to do any such thing, but was at liberty to transact any surplus or substandard insurance with any company, whenever and whereever he pleased, or, in other words, to violate the express and explicit terms of the contract. Such a usage was in no sense explanatory of, but in direct conflict with, the terms of the contract, and did not constitute a valid excuse for appellee's failure to comply with its terms. And since it appears from his own uncontradicted testimony that he had violated the terms of the contract, and since there is no evidence in the record to show that appellant gave its written consent to appellee's transactions for other companies, or waived such violation, and since his right to recover was conditioned upon his performance of the obligations imposed upon him by the contract, it follows that the first prayer of the appellant should have been granted.

Defendant's fourth, fifth, sixth, seventh, and ninth prayers were properly refused, because they were not based upon any evidence in the case, and its eighth, and eighth and a half, prayers were properly refused, because they were inconsistent with the principles to which we have referred in this opinion.

It follows that since, in our opinion, the appellant's first prayer, withdrawing the case from the jury, should have been granted, the judgment appealed from must be reversed.

*Judgment reversed, with costs.*