**J. B. Nathanson, Appellee, v. John Hancock Mutual Life Insurance Company and William M. Houze, Appellants.**

**Gen. No. 38,370.**

Opinion filed February 3, 1936.

HOYNE, O'CONNOR & RUBINKAM, of Chicago, for appellants; NATHANIEL RUBINKAM and WILLIAM S. ALLEN, of Chicago, of counsel.

F. A. GARIEPY and OWEN RALL, both of Chicago, for appellee.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

Plaintiff brought suit claiming certain commissions from defendant insurance company on account of policies secured by him, and also an item of $38 alleged to have been wrongfully retained by defendant William M. Houze; upon trial by the court plaintiff had judgment on both claims and defendants appeal.

As to the item of $38 retained by defendant Houze, defendants seek to justify this by showing that a creditor of plaintiff garnisheed defendants and that they were put to an expense of $38 to defend this proceeding, hence this amount was charged to plaintiff's account. We know of no justification either on precedent or principle for charging this item against plain-

tiff's account. Under certain circumstances judgment may be entered against the garnishee (Ill. State Bar Stats. 1935, par. 7, ch. 62, Garnishment Act), and the expenses of defending the garnishment proceeding were as much for the benefit of defendants as for the plaintiff. The trial court properly found that plaintiff was entitled to recover this item of $38.

Plaintiff claims certain commissions on the premiums on two policies issued by defendant and procured by him,—one called the Demont policy and the other the Courtwright policy.

Plaintiff was employed under a written contract in the form of a letter from defendants authorizing plaintiff to procure applications for life insurance in defendant company, and on policies issued pursuant to such applications plaintiff "will be allowed first year and renewal commissions on premiums on such policies, if actually collected and paid over to said Company." Then follows an itemized list of the various kinds of policies with the rates of commission to be paid. Plaintiff claims a half year's commission of $361.50 on the Demont policy. Defendant asserts that the half yearly premium on this policy was not "actually collected and paid over to said Company" and therefore plaintiff is entitled to no commissions on this policy.

In August, 1930, plaintiff sold for defendants an ordinary life insurance policy to Carl Demont for $60,000, carrying on annual premium charge of $1,417.80; Demont paid the premium for the first six months and plaintiff was paid his commission on this amount; Demont died March 2, 1931; a dispute arose as to whether he had committed suicide; if he died by suicide nothing would be due; suit was commenced on the policy and a compromise settlement of $35,300 was made, which amount was paid to the beneficiary in the policy. Defendant argues that this transaction shows

that no premiums were collected and paid over to the company for this second six months' period in which Demont died. The Demont policy contains a provision that in event of death the company will pay "the sum insured, less any indebtedness to the Company hereon, and less any unpaid balance of premium for the uncompleted policy year." It might be added that this provision is substantially the same as contained in the present statute, chap. 73, par. 432 (16), subpar. 2.

Defendant argues that because there was a compromise settlement for less than the face amount of the policy this provision was not enforced, and that there is no evidence that the company deducted the unpaid balance of premium for the uncompleted policy year. We are of the opinion that it is self-evident that this was done. By paying the beneficiary in the policy any sum, whether the full amount or by compromise, the company acknowledged liability under a live policy, which could be alive only by virtue of the payment of the premium for the current period during which the liability occurred. Otherwise it must be considered that the company paid out a substantial sum without receiving the premium to which it was entitled. This is unthinkable. Just by what manner of bookkeeping this was accomplished is unimportant. It is sufficient to say that the company must have, in some way, collected the insurance premium for the second six months' period. It should be noted that the contract does not require that the premiums on which plaintiff is entitled to a commission must be paid directly by the insured. In substance it includes such premiums as are accounted for in such a way that the company receives the benefit of them. We hold that the transaction sufficiently shows that the defendant company received the second six months' premium on the Demont policy, and plaintiff is entitled to the commission thereon.

The second item has to do with the Courtwright policy. Plaintiff sold a life insurance policy in the defendant company to Courtwright in May, 1927; the policy contained a provision that for an increased amount of premium the insured might receive disability benefits, in which case the company waived premiums; this increased premium was paid by the insured, but in September, 1932, these premiums were waived as of July, 1930, pursuant to the disability provisions of the policy. Plaintiff claims that he is still entitled to commissions on the amount of premiums, although their payment from the insured has been waived. Defendant invokes the provision of the contract of employment and says that these premiums which were waived were not collected and paid over to the company, therefore plaintiff is not entitled to any commission on these waived premiums. We have here a question somewhat similar to that in the Demont instance. When the insurance company pays disability benefits and waives all premiums, how does the company provide for such benefits and for the compensation to itself in lieu of premiums paid by the insured? We again say that it must be self-evident that the company in some manner provides for such a situation.

The court permitted witnesses to testify that there was a custom existing in the life insurance business with reference to commisions paid to agents on premiums waived pursuant to a disability provision in the policy; that it is customary for insurance companies to set up a disability reserve fund from the excess premium paid by the assured for the disability benefit, and that when any one of the policyholders becomes disabled the premiums due under that policy are paid from that fund, and thus the insurance companies themselves keep the policy in force. This would

be a very reasonable custom, and the credibility of the witnesses in this respect commends itself.

Counsel for defendant earnestly argue that it was improper to introduce any evidence as to custom in view of the asserted unambiguous language of the contract of employment. But it is evident that in a situation like that which arose in the Courtwright case, the question would at once arise as to how the company received compensation for paying disability benefits after the premiums were waived. To explain this by parol evidence is not to contradict or vary the terms of a written document but to explain the situation in accordance with the uniform custom of the business. The admission of parol evidence for this purpose has been approved. *Sterling-Midland Coal Co. v. Great Lakes Coal & Coke Co.*, 334 Ill. 281; *DeStefano v. Associated Fruit Co.*, 318 Ill. 345.

In *Pick v. State Mut. Life Assur. Co.*, 272 Ill. App. 602 (Abst.), a claim was made by plaintiff for commissions on premiums the payment of which had been waived under the provisions of the policy. The court there said that the provision in the contract of employment that commissions would be paid "as the premiums were paid" included premiums when paid out of the disability reserve fund of the company after it had waived premium payments, just as much as if the premiums were paid directly by the insured. It was also held that the evidence as to custom was not presented for the purpose of contradicting the terms of the written contract but was admissible to explain the practice in insurance circles with reference to commissions on waived premiums, upon which the contract was silent, citing Greenleaf on Evidence, 16th Ed., vol. 1, sec. 292. The opinion also restated the well known rule that if the contract is in anywise ambiguous or uncertain, all doubt should be resolved most strongly against the party who prepared the form of

the contract, which in this case was the defendant insurance company. The opinion also makes this pertinent comment:

"It is difficult to assume that plaintiff, as agent, would undertake, or that defendant would expect him to undertake, to sell life insurance, commending as an additional and attractive feature of the policy the provisions for disability benefits and waiver of premium payments, with full knowledge on his part that the additional attractive features of the policy which he urged on his client would, in the event of disability, deprive plaintiff of renewal commissions which he would have received if that provision were not included in the policy."

We hold that the court properly allowed plaintiff commissions on the Courtwright policy.

Defendant refers to the contract between defendant insurance company and the codefendant Houze, but plaintiff was not a party to this contract and there is no evidence that he knew its contents. The trial court properly ruled that plaintiff was not bound by the restrictions and limitations contained in this contract.

We see no reason to disagree with the conclusion of the trial court and the judgments are affirmed.

*Affirmed.*

MATCHETT and O'CONNOR, JJ., concur.