## LOUIS CLAUDE BURCH *v.* PRUDENTIAL INSURANCE CO. OF AMERICA

[No. 40, January Term, 1945.]

*Decided May 16, 1945.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, · COLLINS, GRASON, MELVIN, HENDERSON, and MARKELL, JJ.

*Francis B. Burch* with whom were *Armstrong, Machen, Allen & Eney,* and *Julius G. Maurer* on the brief, for the appellant.

*Eli Frank, Jr.,* with whom were *Frank, Skeen & Ottenheimer* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

The appellant in this case brought an action at law in the Superior Court of Baltimore City upon a special agency contract, to collect renewal commissions on life insurance premiums, the payment of which by the insured had been waived by the appellee pursuant to the terms of the insured's policy. From a judgment for the appellee by the Court, sitting as a jury, the case comes here.

Section 2 of the special agency contract, entered into between the parties on August 8, 1937, provided for the payment of commissions, with respect to business procured by the agent personally, on all premiums and considerations collected by him and paid to the company in cash during the continuance of the contract. Section 4 of the contract read as follows: "That no commissions shall be paid to the Agent on account of 'any policy or Annuity contract, issued under this contract, after it has been lapsed or after the discontinuance of premium or consideration payments for any reason, by the insured, the annuitant or the holder of the policy or Annuity contract; but, if during the continuance of this contract the Agent shall secure the revival of any policy or Annuity contract originally written by him personally, the Company will pay commissions thereon to the Agent in accordance with Section 2 hereof, as though the policy or Annuity contract had not been lapsed; but, where the Agent se-

cures the revival of any policy or Annuity contract not written by him personally, the Company reserves the right to adjust credit and commissions in accordance with its general rule and practice." Section 8 provided "that if the Company shall return all the premiums or considerations or any portion thereof * * * the Agent shall repay to the Company, on demand, the amount of commissions received by him on premiums or considerations so returned."

On October 1, 1937, the appellant procured a customer who took out a life policy containing a provision that the company, upon proof that the insured had become totally and permanently disabled before the age of sixty, would "waive the payment of certain premiums otherwise payable under this policy." The premiums to be waived were defined as those "the due date of which (not including days of grace) shall occur after disability has become total as above defined but in no event before a date more than one year prior to the date of receipt by the Company of notice of disability as described in paragraph (d) above. Dividends under this Policy will be allowed as though the disability had not occurred. If disability occur during the days of grace for payment of a premium, the Insured shall be liable for payment of such premium, with interest, if any." Paragraph (h) provided: "The disability provisions in this Policy are granted without specific extra premium being charged therefor, but the cost thereof is included in the premium for this Policy."

The insured became totally and permanently disabled in 1941, and, upon satisfactory proof, the company waived payment of the sixth and seventh annual premiums falling due on October 1, 1942, and October 1, 1943. The appellant claims renewal commissions thereon.

The sole question presented is whether the waiver of these premium payments constituted a "discontinuance of premium or consideration payments for any reason by the insured," within the meaning of Section 4 of the agency contract. The appellant contends (1) that the

payments were not discontinued, but were in fact continued by the insurer on behalf of the insured. The appellant further contends (2) that the trial court erred in excluding testimony as to a custom and usage among insurance companies to pay, on behalf of their insureds, premiums waived during disability.

1. The evidence upon which the appellant relies, to establish his first contention consists of financial statements of the appellee and its answers to interrogatories that may be summarized as follows:

Upon the books of the company, premiums waived (less commissions and taxes), as well as disability payments made by it, are carried under the heading "Disbursements: permanent and total disability." Reinsurance is deducted from the gross amount of these "disbursements." The amount of these premiums waived, thus debited to disability claims, is credited to "premiums by Disability claims." These balancing entries, not payments but accruals, seem to be designed by appropriate bookkeeping to show separately the status of life risks and disability risks. The company pays dividends in cash during the period premiums are waived, which may be applied by the insured to the reduction of any premiums due; if so applied the company pays commissions thereon. The company makes premium loans under some circumstances, and after application to premiums due, allows commissions thereon. In some cases it permits an insured to anticipate loan values, and in such cases allows commissions.

It may be gathered from these statements and admissions that the insurer recognizes that the insured possesses all of the rights and benefits under the policy, after waiver of premiums, that he would enjoy if the premiums were paid by the insured. The effect of the entries upon the books of the company is to reduce its net worth by reason of the expected loss of revenue incidental to the operation of the waiver of premium clause. But it is difficult to see how such entries could convert nonpayment into payment, or a liability into an asset.

No new consideration passes from the insured to the insurer after waiver; at most, the entries only indicate a balancing of premiums already paid (by the insured and others) against its liability to pay the policy at maturity. On the other hand, when the company grants a policy loan or pays a dividend, and by direction of the insured the proceeds are applied to payment of premiums, a new consideration passes to the insurer, which is reflected in the book entries. The distinction seems clear. In the latter case there must necessarily be a credit extended to the insured, or payment to him, out of which his premium liability is satisfied; in the case of waiver, there is a complete absence of liability for further premiums. The insurer having paid commissions on all premiums collected from policies of this type, to require further payment of commissions after waiver would amount to double remuneration, so far as the agent is concerned.

To what exent the bookkeeping practice of the appellee would be material, in a case where standard accounting is prescribed by regulatory authority, need not be considered here. The evidence does not support the appellant's theory of constructive payment. There is no evidence that the particular premiums upon which commissions are claimed were entered as paid; there is evidence, on the other hand, that commissions thereon were not set up as a liability. The conduct of the parties is only relevant as bearing upon their intention. The real issue is as to the true meaning of the words used in the contract.

It appears that no clause of this character has been construed, heretofore, by this Court. We have been referred to a few cases in other states where the question has arisen. In *Handshoe v. Equitable Life Assurance Soc.*, 1935, 297 N. Y. S. 434, 435, the Supreme Court Appellate Term, First Department, reversed a lower court decision in favor of the agent. The contract called for commissions on "premiums as paid in cash to the society," and it was held that waived premiums did not fall within this category. In *State ex rel. Mitchell v.*

*Hobbs,* 1944, 158 Kan. 320, 147 P. 2d 721, the question was whether the state tax on "premiums collected" attached to premiums waived by reason of a disability provision. The Court held it did not, despite the fact that it was shown that the company carried premiums waived as a disbursement item upon its books. On the other hand, in *Nathanson v. John Hancock Mutual Life Ins. Co.,* 1936, 283 Ill. App. 424, the appellate court of the First District, First Division, held that an agent was entitled to commissions on premiums waived during disability. In that case the contract called for commissions on premiums "actually collected and paid over to said Company." The court stressed the fact that the contract did not require that the premiums be paid directly by the insured. This is perhaps sufficient to distinguish the case, but in any event we think the decision was based upon a misconception of the effect of the bookkeeping entries of the company. It is true that the company receives compensation for the risk, but, as we have pointed out, this compensation is derived from premiums upon which commissions have already been paid.

2. The plaintiff Burch, called as a witness, was asked during the trial if he knew of his own experience in the insurance business "when the premiums are waived, if those premiums are paid by the Company on behalf of the insured?" The court sustained an objection to this question, and to a similar question, propounded to the witness Harrison, as to whether other insurance companies, for which he had worked, paid the premiums on behalf of the insureds, after waiver of payment. Both questions were intended to establish a custom or usage in the insurance business.

The rule as to the admissibility of evidence of custom or usage to explain the terms of a written contract was stated by this court in the recent case of *Applestein v. Royal Realty Corp.,* 181 Md. 171, 173, 28 A. 2d 830, 831: "The true test is that there must be in the contract something doubtful which can be explained by a usage or custom. If the contract is plain, evidence cannot be received to contradict it. If the contract is made with reference

to a usage and therefore omits the special particulars which are supplied by that usage, those particulars can be supplied by proof of the usage. *Travelers' Insurance Company v. Hermann,* 154 Md. 171, 140 A. 64."

In the case at bar the effort was to interpret, by proof of usage, the phrase "discontinuance of premium payments for any reason by the insured," so as to require payment of commissions after waiver of premium payments by the company. But we think the proffered testimony was properly excluded. The usage contended for would convert discontinuance into continuance, and waiver of payment into payment; this is inconsistent with and repugnant to the explicit terms of the written agreement. The usage would contradict and vary the terms of the written agreement, rather than explain it. See *Highley v. Phillips,* 176 Md. 463, 5 A. 2d 824; *Scarlett v. Young,* 170 Md. 358, 185 A. 129; *Travelers' Ins. Co. v. Hermann, supra; Jarrett v. J. Staum & Sons Co.,* 138 Md. 217, 113 A. 720; *Busby v. N. A. Life Ins. Co.,* 40 Md. 572, 581, 17 Am. Rep. 634; *Restatement, Contracts,* Sec. 246. Moreover, the questions were argumentative and called for conclusions of the witnesses as to whether the admitted bookkeeping practice of the appellee, and other companies, amounted to payment in the legal sense. The questions were not designed to elicit any new facts as to that practice, but merely called for an expression of opinion upon a point which, if relevant to the inquiry as to the construction of the agency contract, was for the court to decide. *Highley v. Phillips, supra.* Even a general trade usage of payment would not prove payment in fact of those premiums upon which the appellant's claim is based. *Busby v. N. A. Life Ins. Co., supra.* And if payments were made under agreements containing provisions different from those in the case at bar, the fact of payment would be wholly irrelevant.

We think the trial court correctly construed the contract to preclude a recovery under the facts of this case, and the judgment will therefore be affirmed.

*Judgment affirmed, with costs to appellee.*