ALBERT L. POTTER and FRANK POTTER

*v.*

URIAH S. HOLLISTER.

1. A complainant in an action for specific performance may prove the contract on which he relies by letters, but to warrant the court in holding the letters to be a contract, it must appear, that the writer parted with them as evidence of the terms of a contract to which he assented; they must contain all the material terms of the contract and show that the parties understood the terms of the contract alike.

2. When it appears that the whole of the subject-matter about which the parties dealt is not embraced in the letters, so that their written contract is incomplete, a court of equity will decline to interfere.

3. Equity will always decline to interfere when the evidence leaves the terms of the contract in uncertainty, or if it be reasonably doubtful whether the contract was finally closed.

4. A letter written by a principal to his agent, which is merely intended as a delegation of authority or instruction to the agent, and which the principal gives his agent no authority to deliver, is not a contract.

5. This court may enforce the specific performance of a contract for the sale and purchase of land located in another State.

6. A party to a suit is bound by an admission made by him under oath in open court.

On final hearing on bill and answer and proofs taken in open court.

Potter v. Hollister.

*Mr. Greene,* of Connecticut, and *Mr. Frank Bergen,* for the complainants.

*Mr. R. Field Stockton* and the *Attorney-General,* for the defendant.

VAN FLEET, V. C.

This is a suit by the vendors of land against the vendee, asking a decree requiring the vendee to specifically perform his contract of purchase. The bill alleges that the contract, which the complainants seek to have enforced, is in writing. The following is the averment of the bill on that subject:

"Your orators and the said Uriah S. Hollister, on or about the fifteenth day of September, 1888, entered into an agreement in writing respecting the sale and purchase of the said land and premises, consisting of certain letters or correspondence, written and signed by the said Uriah S. Hollister and by Nicholas Tarrant, who was the agent of your orators for the sale of said lands and premises, and by your orators lawfully authorized to make sale of the said lands and premises to the said Hollister."

NOTE.—In *Shrewsbury* v. *Shrewsbury, 18 Jur. 397,* an agreement was made by certain trustees to purchase lands, but it was not signed by them, and the proof thereof rested on some letters written by the vendor to his solicitors, and by the latter to the vendor, his solicitors being also the solicitors of the trustees. After the vendor's death—*Held,* that there was no binding contract enforceable against the vendor's representatives.

In *McElroy* v. *Seery, 61 Md. 389,* H. ordered through R., a salesman of S., a bill of merchandise, and a memorandum of the articles and of H.'s address was made at the time by R. and sent to S. by mail, but it was not signed by H. or by R.—*Held,* that it was insufficient to bind S.; see *Drury* v. *Young, 58 Md. 546; Banks* v. *Chas. P. Harris Manf. Co., 20 Fed. Rep. 667, 669, note.*

In *Hastings* v. *Weber, 142 Mass. 232,* A. directed his agent to look for a store for him, and to negotiate for a lease of it. The agent wrote a letter to A, stating that he had been looking at B's store, describing the premises, which could be rented for $4,000 a year for a term of five years, and inquiring whether the premises and rent were satisfactory. A telegraphed his agent, "If basement included at $4,000, secure five years' lease." This telegram the agent handed to B, who verbally accepted the offer.—*Held,* that there was not a sufficient memorandum to charge A; see *Doherty* v. *Hill, 144 Mass. 465.*

In *Kinloch* v. *Savage, Speer's Ch. 464,* a letter from complainant's agent to an auctioneer, touching his sale of certain lands in which complainant was interested, and which were afterwards sold by the auctioneer, was held insufficient.

The case made by the bill is, that the defendant agreed, in writing, with the complainants to purchase of them the land described in the bill for $4,500, and to pay the whole of the purchase-money on the delivery of the deed. A deed has been proffered to the defendant, and demand made for the payment of the purchase-money. He refused to accept the deed and to pay the purchase-money. These are the principal facts averred in the bill.

The defendant denies that he entered into an agreement in writing with the complainants for the purchase of the land in question, but admits that he both telegraphed and wrote to Tarrant, stating that he would take the complainants' property for $4,500 and pay for it on the delivery of the deed. But he insists, that what he said to Tarrant in writing cannot be treated in law as constituting a contract between the complainants and himself, because, he says, that, when he sent the telegram to Tarrant, and also when he wrote to him, he believed Tarrant to be his own agent, and communicated with him in that capacity, and not as the agent of the complainants, and that his communications to

In *Smith* v. *Watson*, *Bumb. 55*, a decedent, in his lifetime, had agreed verbally with complainant to assign him a lease, and thereafter wrote a letter to his own solicitor, directing him to draw the assignment and stating its terms &c.—*Held*, that the letter was a writing within the meaning of the statute.

In *Gibson* v. *Holland*, *L. R.* (*1 C. P.*) *1*, a letter signed by the party to be charged, written to his own agent, referring to letters of the agent stating the terms upon which the latter had made a contract on his behalf with the plaintiff for the purchase of goods, was held to be a sufficient note or memorandum of the bargain to satisfy the statute.

In *Campbell* v. *Dennistoun*, *23 U. C. C. P. 339*, H. and D., the defendants, were in partnership as solicitors, H. living in L. and D. in P. H. wrote an agreement for the purchase by plaintiff of lands owned by H. and D., which plaintiff signed alone. The same day H. wrote a letter to D., stating that he had sold the premises to plaintiff.—*Held*, that the agreement and letter, taken together, were sufficient under the statute to charge H. and D.; see *Kleman* v. *Collins*, *9 Bush 460*.

In *Owen* v. *Thomas*, *3 Myl. & K. 353*, a letter written by plaintiff, by defendant's direction, to defendant's solicitor, and signed by defendant, was deemed sufficient.

In *Spangler* v. *Danforth*, *65 Ill. 152*, a letter by the vendor to his agent, delivered by the vendor to the purchaser, was held sufficient.

Tarrant must, consequently, be held to be in law, as they were in fact, the instructions of a principal to his agent, and not as constituting a contract with the complainants, nor as communications to them. The defendant's insistment is, that the utmost effect which can be given to his communications to Tarrant is, to consider them as a delegation of power to Tarrant, authorizing him to enter into a contract on behalf of the defendant with the complainants for the purchase of the land.

The land, which is the subject of the suit, is situate in the town of Norwich, in the State of Connecticut. Mr. Tarrant resides in the town of Norwich, and the defendant's communications to him were received by him there. The statute of frauds of Connecticut declares, that no suit in law or equity shall be brought or maintained upon any contract for the sale of lands, unless the contract upon which the action shall be brought, or some note or memorandum thereof, shall be made in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized. *Osborn* v. *Phelps, 19 Conn. 63, 70.*

In *Goodwin* v. *Fielding, 4 DeG., M. & G. 90,* a query was raised, whether a letter from an executrix to her own solicitor a few hours after she had made a verbal contract to sell to complainant the residue of a term of her deceased lessee, was a sufficient memorandum, but the case was decided on another point.

In *Wood* v. *Davis, 82 Ill. 311,* a vendee went to the agent of the vendor and made him a definite offer for certain premises, which the agent submitted to the vendor by letter. The agent afterwards wrote to the vendee that the vendor had accepted the offer, and the agent then sent a deed for the premises to the vendor which was duly executed and returned to the agent.—*Held,* sufficient, in an action by the vendee.

In *Lee* v. *Cherry, 85 Tenn. 707,* a vendor, the defendant, authorized his agent, by letter, to sell a lot (describing it) for $6,000, one-third cash and the balance in one and two years, with interest. After some negotiations between the agent and complainant, the vendee, a letter from the agent to the vendor stated that he had sold the lot to "Mr. Lee" [the complainant] on the terms specified by the vendor. The vendee afterwards had the deed for the premises drawn up and forwarded by the agent to the vendor for execution, and also an abstract of the taxes which were to be paid by the vendor. These taxes proving heavier than anticipated, the vendor declined to sign the deed.—*Held,* that the letters which passed between the vendor and his agent were sufficient.

Potter *v.* Hollister.

The relation in which Tarrant stood to the defendant, or in which the defendant believed Tarrant stood to him, when he sent to Tarrant the communications which the complainants make the basis of their suit, is, in my judgment, the pivotal point of the case, for while it is well settled that the complainant in an action for specific performance may prove the contract on which he relies, so as to take his case out of the statute of frauds, by letters, yet it would seem to be entirely clear, according to the fundamental principles on which relief in such cases is administered, that, to warrant the court in enforcing a contract thus made, it must be made clearly to appear, that the party sought to be held has intentionally entered into a written contract with the party seeking to hold him, not that he has merely given his own agent authority to enter into a contract for him. His letters must be addressed or sent to the other party or to the agent of the other party. He must have parted with them as evidence of the terms of the contract he agreed to. His letters, either when standing alone or when taken in connection with those of the other party, must contain all the material terms of the contract, and they

In *Field* v. *Boland,* 1 *Dr. & Wal.* 37, A and B entered into a verbal treaty for the purchase of certain lands belonging to A, but not being able to agree upon a price therefor, A wrote a letter to C, stating that he would take a specified sum for the premises if C approved thereof. B afterwards deposited with C the amount thus named, and thereupon C wrote an acknowledgment of its receipt on A's letter, adding that it was "a great price." On bill for specific performance by B—*Held,* that C must be regarded as the agent of A, and that C's memorandum on A's letter bound A to perform the agreement.

In *Warfield* v. *Wisconsin Cranberry Co.,* 63 *Iowa 312,* one Barnes procured the plaintiffs to order cranberries of defendant by a written order. The defendant wrote a letter to Barnes accepting the order, which letter Barnes showed to plaintiffs.—*Held,* that defendant was bound thereby, whether he intended Barnes to show the letter to plaintiffs or not. [In this case *Seevers, J.,* although deprecating some expressions in *Steel* v. *Fife,* 48 *Iowa 99,* approves it, but explains and distinguishes it]. See *North* v. *Mendel,* 73 *Ga.* 400; *Clark* v. *Tucker,* 2 *Sandf.* 157.

That a letter written by a party to his own agent is a sufficient memorandum, has been announced, *obiter,* in *Townsend* v. *Hargraves,* 118 *Mass.* 325, 335; *Moore* v. *Mountcastle,* 61 *Mo.* 424, 426; *Kleman* v. *Collins,* 9 *Bush* 460, 467; *Drury* v. *Young,* 58 *Md.* 546, 552; and the case of *Welford* v. *Beazeley,* 3 *Atk.* 503, seems to have been cited approvingly by Chancellor Williamson in *Smith* v. *Howell,* 3 *Stock.* 349, 356, and also in *Moss* v. *Atkinson,* 44 *Cal.* 3, 16.—REP.

must make it manifest that both parties understood the terms of the contract alike; in other words, that their minds met. When, however, it appears that the whole of the subject-matter about which the parties dealt is not embraced in the letters on which the complainant relies, and their contract, for that reason, is incomplete—their minds never having come together—there a court of equity can do nothing, for it is only in cases of completed contracts, which are fair in themselves and which have been fairly obtained, that equity can give relief by way of specific performance. *Braeutigam* v. *Edwards, 11 Stew. Eq. 542.* Equity will always decline to interfere when the evidence leaves the terms of the contract in uncertainty, or if it be reasonably doubtful whether the contract was finally closed. *Brewer* v. *Wilson, 2 C. E. Gr. 180, 182; Brown* v. *Brown, 6 Stew. Eq. 650, 657.*

As to whether a letter written by a principal to his agent can be used by a third person as evidence of a written contract between himself and the principal, I am aware that Lord Hardwicke is reported as saying, in *Welford* v. *Beazeley, 3 Atk. 503:* "There have been cases where a letter written to a man's own agent, and setting forth the terms of an agreement as concluded by him, has been deemed to be a signing within the statute, and agreeable to the provision of it." But I have been unable to find a single case in which it has been so held. I find, on the contrary, that the supreme court of Iowa expressly held, in *Steel* v. *Fife, 48 Iowa 99,* that a letter written by a principal to his agent, stating the terms on which he would sell certain land, which terms the agent subsequently reported to a buyer, who accepted them, did not constitute a written contract with the buyer so as to take the case out of the statute of frauds. The court said, that the delivery of the letter to the agent could have no other or greater effect than if the principal had written the letter and then retained it in his own possession. The decision in the case just cited obviously rests upon correct principle. It is indispensable to the making of a contract that there shall be communication between two minds—there must be a proposal by one and an acceptance by the other—two minds must meet and mutually assent—but where the written communication is exclus-

ively between the principal and his agent, and is simply intended by the principal as a delegation of power or instruction to his agent, and the principal gives his agent no authority to deliver his letter to the other party, it is impossible to say, without an abuse of language, that the letter is evidence of a contract made by the principal with the other party. My conclusion on this branch of the case is, that if it be true, that the defendant made to Tarrant the communication on which the complainants rely, under an honest belief that Tarrant was his agent, and without knowledge that he was also acting as the agent of the complainants, his communications cannot, as a matter of law, be held to be a contract with the complainants. If the court were to so hold them, it would, in effect, make a contract for the defendant against his will. That is a thing which this court cannot do.

The fact that the land which is the subject of the suit is beyond the jurisdiction of the court, and situate in another State, constitutes no reason why relief should be refused, if in other respects the complainants have made a case which entitles them to a decree, for the principle is firmly established, that it is not necessary to jurisdiction in such cases that the land, which is the subject of the suit, should be located within the territory over which the court, in which the suit is brought, may rightfully exercise its power. All that is necessary in such cases to enable the court to exert its power is, that it shall have jurisdiction of the parties, for in all suits in equity the primary decree is *in personam* and not *in rem*. *Wood* v. *Warner*, *2 McCart. 81, 84; Davis* v. *Headley*, *7 C. E. Gr. 115, 120.*

The proofs on the main question, namely, whether the defendant made the communications to Tarrant, on which the complainants rely, under a belief that Tarrant was his agent, and without knowledge that he was also acting as the agent of the complainants, do not make a strong and perfectly clear case either way, but leave the question whether or not those communications can safely and rightfully be held to be a contract in such serious doubt, that I think it is the duty of the court, under the principles which must control its judgment, to decline to make the decree the complainants ask, but leave them to their

remedy at law. The jurisdiction of a court of equity to decree specific performance is not compulsory, but discretionary. The question in such cases is not what must the court do, but what may it do under the circumstances. *Radcliffe* v. *Warrington, 12 Ves. 326; Brown* v. *Brown, 6 Stew. Eq. 650.* The court must be satisfied that the claim for a deed is fair, just and reasonable, and the contract equal in all its parts, and founded on an adequate consideration, before it will interpose with this extraordinary assistance. *Seymour* v. *Delancey, 6 Johns. Ch. 222.* Whether or not a contract shall be ordered to be specifically performed is always a matter resting in sound discretion. * * * If the claim for a deed is not just and reasonable, * * * the party asking for specific performance will be left to his remedy at law. Considerable caution should be used in decreeing specific performance. The court is bound to see that it really does the complete justice which is aimed at, and which is the ground of its jurisdiction. *King* v. *Morford, Sax. 274.* In a case where doubt exists as to whether a contract has been made, the court is without the least claim to jurisdiction.

The facts appearing in the evidence, bearing on the principal question, may be summarized as follows: Mr. Tarrant is a real estate broker doing business at Norwich, Connecticut. He has been a real estate broker there for nearly twenty years, and as such seeks employment to negotiate the sale and purchase of land. In July, 1888, the complainants put the land in question in Mr. Tarrant's hands to sell. They left a map or diagram of the land with him. The defendant, without previous acquaintance with Mr. Tarrant, called on him on the 31st of August, 1888. Mr. Tarrant says the defendant asked him if he had any property for sale fronting on the river and the railroad, and that he replied he had. The defendant, on the contrary, says that the question he put to Mr. Tarrant was, whether he knew of any property for sale, situated in the manner above described, and that Mr. Tarrant replied that he did. Two other tracts, belonging to other persons, were first shown to the defendant, and then the land in question. Mr. Tarrant says, when the land of the complainants was shown, the defendant asked what

were its dimensions and its price, and that he replied, that he could not give its exact dimensions, nor its price there, but if the defendant would return to his (Tarrant's) office, the information he wanted would be given to him there. After they returned to the office, Mr. Tarrant sent his clerk for Mr. Albert L. Potter, one of the complainants. When Mr. Potter appeared at the office, Mr. Tarrant, after introducing the defendant to Mr. Potter as a gentleman who wanted to buy his property, said to Mr. Potter, that the defendant wanted to know the price of his property. The map or diagram, which the complainants had left with Mr. Tarrant, was then shown to the defendant—the defendant says that he thought Mr. Potter produced it, while Mr. Tarrant says he took it from his safe—and after Mr. Potter had asked the defendant whether, if he bought the land, he intended to use it for a coal or lumber yard, and having been told that he did not, Mr. Potter stated that he would sell the land, including about $500 worth of piles which he had placed upon the land with a view of constructing a wharf along its water-front, for $4,500. At the defendant's request, Mr. Potter gave the defendant fifteen days within which to decide whether he would purchase or not. The parties then separated and did not meet again. There is no evidence tending to show that Tarrant, at any time during the negotiations, told the defendant that the complainants' land was in his hands for sale, or that he was the complainants' agent. Tarrant gave no evidence upon that subject, except to say that the question put to him by the defendant, when they first met, was, whether he had any property for sale having a front on both the river and the railroad, and that he replied he had. The defendant testified, however, that Tarrant did not tell him that the complainants' land was in his hands for sale. He says that what Tarrant said about the complainants' land was, that there was a piece of property for sale. He did not want to name a price; he would have to see the owner. The defendant also testified that in all his intercourse with Tarrant, during the negotiations, he believed Tarrant to be acting as his agent and not as the agent of the complainants. On the 15th day of September, 1888, the de-

fendant sent the following telegram to Mr. Tarrant: "I will take the Potter property at $4,500 cash. I send you $100 and instructions by letter." In his letter to Mr. Tarrant of the same date, the defendant said:

"I wired you to-day that I would take the Potter property at $4,500 cash, and enclose herewith $100 as guarantee of my good faith in the matter. This payment, of course, is subject to the title being approved, and you will please ask some attorney there to make an abstract of the title of this property at once, including everything that in his opinion should be included to satisfy my attorney here that the title is merchantable. As soon as I receive this, and decide upon it, and find it all right, will instruct you to have the deed made to myself, and will arrange to pay the balance due on the purchase when the deed is transferred to me. * * *

"Of course, I understand that the price named covers all of the Potter property north of Thames Iron Works, 217 x 260 feet more or less, on both sides of railroad track."

This letter is the written contract on which the complainants rest their right to relief. They contend that its first and concluding sentences state the terms of the contract with such fullness and certainty as enables the court to see just what they are, and as will enable the court to make a decree which will do full and complete justice to both parties. This would be true, I think, if it appeared that the thing about which the parties were bargaining was land alone. That was not so, however, in this case. Although the complainants, by their bill, ask simply to have the contract, which they allege the defendant made with them, specifically performed so far as it embraces land, yet it clearly appears, by the evidence of Mr. Albert L. Potter, elicited by a question put to him by his own counsel (Mr. Greene), that the subject-matter of the contract consisted of something besides land. Mr. Potter swears distinctly that the things he told the defendant he would sell him for $4,500 were the land and the piling on it, and that the piling was worth about $500. The defendant's letter to Tarrant says nothing about the piling. The piling, it will be observed, represented in value about one-ninth of the purchase-money. It cannot be believed that the defendant meant to exclude the piling from his purchase, and to agree to pay $4,500 for the land without the piling. Men of ordinary

sense and selfishness do not deal in that way. The failure of
the defendant to mention the piling in his letter may be readily
and reasonably accounted for on the theory that he wrote to
Tarrant as his agent. The piling had been the subject of a
conversation between the defendant and Tarrant. Mr. Tarrant
says, before the defendant left his office on the 31st of August,
1888, the defendant inquired of him whether he (Tarrant) under-
stood the $4,500 included everything—the improvements and all
about the property—and that he replied he did. Now, if when
the defendant wrote this letter, he believed that he was writing
to his own agent—that he was writing to a person who not only
knew fully all about what were the subjects of the treaty, but
who was under a duty to carefully protect his interests—he
would naturally write much less cautiously and guardedly than
he would if he understood he was writing to the other contract-
ing party or to his agent. The omission of all allusion to the
piling in this letter is, in my judgment, a very significant cir-
cumstance. Taken in connection with the fact that there was
nothing in either Tarrant's speech or conduct, during the nego-
tiation, plainly and clearly indicating to the defendant that the
land in question was in Tarrant's hands for sale, or that Tar-
rant was the complainants' agent, but much to warrant the
opposite inference, it leaves the vital fact of the complainants'
case in such deep doubt, in my judgment, as to make it the
duty of the court to refuse specific performance.

After one of the complainants had given evidence, proving
that the written contract, on which the complainants' bill is
founded, does not in terms embrace all the property which the
complainants intended to sell and the defendant to buy, the
counsel of the complainants asked the court to overrule this
evidence, or otherwise to disregard it, on the ground that parol
evidence can never be admitted to contradict or vary the terms
of a written instrument. It is unnecessary to discuss in this
case in what instances parol evidence is competent to defeat a
claim made under a written instrument, for the question here
is not as to the competency of evidence, but whether or not
effect shall be given to an admission voluntarily made in open

court by a party to a suit. Here we have an admission made under oath, in open court, by that one of the complainants who conducted the whole of the negotiations resulting in what the complainants allege is a contract, that the written contract on which the complainants rest their right to relief is incomplete in an important particular, namely, that it does not embrace one-ninth in value of the property which they intended to sell and the defendant to buy. An admission of that kind made by the complainants in their bill would have shown that they had no right of action. There is no reason why it should be less efficacious in producing the same result when voluntarily made under oath during the progress of the trial. (a)

The complainants must be left to their remedy at law. Their bill must be dismissed.

(a) In *Boyd* v. *Banta, Coxe 266, 272*, it was said "that if a party calls a witness and examines him as to a fact, which regularly would not operate against him if proved by the other party, unless proved by written testimony, yet as against the party who thus establishes it himself, from his own witness, it shall be conclusive."—REP.