51 N.J. Super. 31 (1958)
143 A.2d 256
MAC LEITNER, PLAINTIFF-APPELLANT,
v.
SAM BRAEN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 5, 1958.
Decided June 27, 1958.
*34 Before Judges STANTON, HALL and GAULKIN.
Mr. Theodore W. Trautwein argued the cause for plaintiff-appellant.
Mr. Charles L. Bertini argued the cause for defendant-respondent (Mr. Guy W. Calissi, attorney and of counsel).
The opinion of the court was delivered by HALL, J.A.D.
Plaintiff appeals from an adverse judgment of the Bergen County District Court sitting without a jury. The action was one for breach of an alleged oral contract to "sponsor" a bowling team or teams. No stenographic record was made below, so the appeal is before us on a statement of the evidence and proceedings (R.R. 1:6-3) *35 and the trial judge's findings of fact and conclusions of law (R.R. 7:16-3). There was no substantial dispute in the evidence as to what took place.
While the complaint alleged a detailed understanding that plaintiff agreed to form two bowling teams for participation in leagues during the 1955-1956 season under the sponsorship and name of the defendant, and the latter agreed to pay plaintiff the league entry fees, bowling fees, cost of bowling shirts with defendant's name lettered thereon, and the team's entry fee for the American Bowling Congress tournament in March 1956, the proofs were quite different.
Leitner and Braen were residents of the same town and casual acquaintances. They happened to meet in September 1955 in a local confectionery store and a conversation ensued in which plaintiff asked defendant to "sponsor" a bowling team during the coming season. Defendant said he would "go along," inquired as to the cost entailed, and was told by plaintiff it would comprise "the usual sponsoring fees." Braen, a local business man, had sponsored teams before and Leitner had organized teams under sponsorship in prior seasons, but there was no evidence of any such relationship between them previously. Braen asked that the team members wear shirts bearing the name of one of his business enterprises. Plaintiff testified that defendant agreed to sponsor two teams, but the latter said he agreed to sponsor only one. The trial court seems to have found that Braen's version was the true one and said that he did not know that two teams were operating under his name until he received the first bill shortly to be mentioned. There were no further discussions or conversations.
Plaintiff proceeded to organize a team which entered and participated in two leagues, one bowling on Monday night and the other on Friday night of each week. He paid the league entry fees, registration fee for the American Bowling Congress tournament and the cost of the shirts lettered with defendant's name. During November Leitner sent Braen a bill for $734, made up of the $250 entry fee for the Monday night league, the $64 entry fee for the Friday night league, *36 the entry fee for the tournament of $165, and the cost of bowling (presumably alley rental) for each team at $15 per week to the date of the bill.
Defendant immediately protested the size of the bill and the items included, and flatly refused to pay it, saying that he did not want to "buy bowling alleys." Finally, some time the following month after repeated demands, defendant, through his accountant, paid the bill, plaintiff being told at the time to "get lost" and "this is it." It was clear that the payment was without concession of obligation as to all the items included or their amount, and plaintiff was given to understand that it was being paid to be through with him once and for all. Obviously the dispute was not over the existence or recognition of any obligation on the part of Braen, but the extent of it. He apparently took the position that the extent of his pecuniary obligation under the agreement to "sponsor" did not embrace all of the items for which he was sought to be charged, and payment of the bill in full more than met his conception of his obligation for the full season.
Leitner, undaunted, continued the participation of the teams under defendant's name, and at the end of the season in June sent defendant a second bill totaling $1,659, which included all of the items of the first bill plus the cost of the shirts at $110 and the weekly bowling costs for the full year. Defendant refused to pay and plaintiff instituted this suit for the difference between the December payment and the total amount of the June bill.
The trial court denied a motion for involuntary dismissal at the end of plaintiff's case and gave judgment for defendant at the end of the entire case. He said in his conclusions of law made after the filing of the notice of appeal: "* * * there was not a complete meeting of the minds between the parties," defendant "had a right to terminate the arrangement" and payment of the first bill was a discharge of his "obligations."
During the trial plaintiff's attorney propounded questions to his client respecting other teams he had organized in prior *37 seasons and the court sustained defendant's objection thereto. Similarly, the court sustained objection to questions propounded by defendant's attorney of his client as to his prior sponsorship activities, and specifically one as to the cost to defendant of such former activities. At the very end of the case the judge himself asked defendant how much he had paid in sponsoring other teams, to which he replied that sponsoring fees had been limited to purchase of shirts and league entrance fees and amounted to somewhere between $50 and $150 a season. Plaintiff's attorney did not object to this question, nor did he ask the right to cross-examine.
Plaintiff's first ground for reversal is that the trial court's conclusion that there was no enforceable contract at the inception is so inconsistent with his further conclusion that defendant had the right to terminate the "arrangement" and discharge his "obligations" by the payment of the first bill as not to support the judgment and require reversal.
If, as plaintiff suggests, the court below intended, by stating in its conclusions "there was not a complete meeting of the minds," to indicate that no contract at all came into being because the parties had quite different mental conceptions of "sponsoring fees," and that the payment of the November bill was under such circumstances as clearly not to be considered to give life to a nudum pactum, there is no real inconsistency even though the terminology of legal concepts was loosely used.
Assuming on the other hand, as defendant urges in his brief, that the trial judge meant that the details of the understanding between the parties were too vague and indefinite to constitute an enforceable contract and that this deficiency was not supplied by the payment, there is again no inconsistency. Even if there was, such is not ground for reversal in and of itself. Peterson v. Hartford Accident & Indemnity Co., 32 N.J. Super. 23, 32 (App. Div. 1954); Goldman v. Shapiro, 16 N.J. Super. 324 (App. Div. 1951). Cf. Head v. Theis, 106 N.J.L. 281, 284 (Sup. Ct. 1930). If the result in the trial court was correct, there must be an affirmance even though an incorrect reason formed the *38 foundation for the judgment. Ballurio v. Castellini, 29 N.J. Super. 383, 387 (App. Div. 1954); R. Krevolin & Co., Inc., v. Brown, 20 N.J. Super. 85, 92 (App. Div. 1952). We are convinced the judgment for defendant was right, but that the conclusions expressed below did not set forth the proper basis of decision on either interpretation.
Initially we should point out there is no doubt that Leitner and Braen intended to enter into a binding undertaking, with sufficient consideration for the latter's promise found in the prospective publicity and business good-will flowing to him from the identification of the name of his business with the team.
The concept of mutual assent is customarily stated as one of the primary requisites to the formation of an informal contract. Such mutual assent is, however, unimportant except as it is manifested by one party to the other, generally by a communicated offer and acceptance. Restatement, Contracts, § 20 (1932); 1 Williston, Contracts (rev. ed. 1936), § 22; Soloff v. Josephson, 21 N.J. Super. 106, 109 (App. Div. 1952). So the obligation depends not on the so-called real intent of a party, but on that expressed. Corn Exchange National Bank & Trust Co. of Philadelphia v. Taubel, 113 N.J.L. 605, 609 (E. & A. 1934). The phrase, "meeting of the minds," can properly mean only the agreement reached by the parties as expressed, i.e., their manifested intention, not one secret or undisclosed, which may be wholly at variance with the former. Van Name v. Federal Deposit Insurance Corp., 130 N.J. Eq. 433, 447 (Ch. 1941), affirmed 132 N.J. Eq. 302 (E. & A. 1942). It is in this sense only that the formation of a contract can be said to require the "meeting of the minds" of the parties. Frequently it is misapplied seemingly to impose the requisite that there is no contract unless both parties understood the terms alike, regardless of the expressions they manifested. E.g., Potter v. Hollister, 45 N.J. Eq. 508, 513 (Ch. 1889), affirmed 46 N.J. Eq. 609 (E. & A. 1890); 1 Williston, Contracts (rev. ed. 1936), § 22, p. 42. It appears to have been so misapplied by the lower court in our case. Clearly *39 plaintiff and defendant agreed to the expressed provision that the latter was to be obligated for "the usual sponsoring fees." The mere fact that each had a different subjective idea of what the term included did not prevent a binding agreement on this objective basis. The situation does not fall within the limited exception to this rule which applies where the manifestation of intention of either party is uncertain or ambiguous, as set forth in section 71 of the Restatement. See 1 Williston, Contracts (rev. ed. 1936), § 95.
On the other hand, is the undertaking in the form expressed too incomplete or vague to be enforceable? We think not. It is, of course, elementary that no enforceable contractual obligation arises where the terms and provisions are deficient in this respect. Restatement, Contracts, § 32 (1932). As was said in Friedman v. Tappan Development Corp., 22 N.J. 523, 531 (1956):
"In a word, a contract is a voluntary obligation proceeding from a common intention arising from an offer and acceptance. Johnson & Johnson v. Charmley Drug Co., 11 N.J. 526 (1953). To be enforceable, a contract must be sufficiently definite in its terms that the performance to be rendered by each party can be ascertained with reasonable certainty. Savarese v. Pyrene Mfg. Co., 9 N.J. 595 (1952)."
But, as Professor Williston points out: "In interpreting doubtful agreements a court will, if possible, attach a sufficiently definite meaning to a bargain of parties who evidently intended to enter into a binding contract * * *." 1 Williston, Contracts (rev. ed. 1936), § 37, p. 100. Here the parties manifested mutual assent to measure the obligation by an external criterion, i.e., the charges and expenses customarily assumed and paid by sponsors of bowling teams in the area. Even where parties do not expressly contract with reference to a pertinent usage, evidence thereof is always admissible to make definite words which would otherwise be vague and indefinite (1 Williston, Contracts (rev. ed. 1936), § 47, p. 136, provided the usage is properly pleaded (Johnson v. Hoffman, 7 N.J. 123, 133 (1951)). See Restatement, Contracts, § 32, p. 41, illustration 1 (1932). The *40 situation is, of course, much stronger where the usage is expressly made part of a contract, for then it is clearly operative upon the parties, they having manifested an assent that it should be. Restatement, Contracts, § 247 (1932); 55 Am. Jur., Usages and Customs, § 33, p. 294; 3 Williston, Contracts (rev. ed. 1936), § 651. In such cases a court will enforce the contract in accordance with the usage so incorporated and the special particulars thereof may be supplied by parol proof. 25 C.J.S. Customs and Usages § 22, p. 111; Burch v. Prudential Insurance Co., 184 Md. 664, 42 A.2d 671, 163 A.L.R. 1466, 1468 (Ct. App. 1945).
Although the complaint here was on the theory of an agreement without reference to any usage, the evidence that the parties expressly contracted on the basis of one, which they thereby recognized as existing, was received without objection (R.R. 4:15-2), and consequently the burden was on plaintiff to establish first the particulars of it. This he made no effort to do in any proper fashion. Central Radiator Co. v. Niagara Fire Insurance Co., 109 N.J.L. 48, 53 (E. & A. 1932); Public Service Mutual Insurance Co. v. White, 4 N.J. Super. 523 (App. Div. 1949); Johnson v. Hoffman, supra, 7 N.J. at page 133. He did not prove this first element of a cause of action, and defendant's motion for involuntary dismissal should have been granted at the end of plaintiff's case.
It is most evident that defendant's ultimate payment of the first bill, under violent protest and with the most positive declaration that the relationship was thereby ended, can in no way be considered, in the sense of interpretation of a contract by subsequent conduct of the parties (Corn Exchange National Bank & Trust Co. of Philadelphia v. Taubel, supra, 113 N.J.L. at page 612), as an acquiescence by him in plaintiff's conception of "usual sponsoring fees." In fact, acceptance of the payment by the latter under the circumstances could well have been found to amount to an accord and satisfaction of the dispute. Peterson v. Hartford Accident & Indemnity Co., supra, 32 N.J. Super. at page 31.
Plaintiff also urges that the court's questioning of *41 defendant at the very end of the case concerning amounts previously paid by him in sponsoring bowling teams was prejudicial error requiring reversal, particularly since questions of similar import sought to be asked of each party earlier in the trial were sustained on objection. It is not urged that these previous inquiries were improperly excluded, nor could it be, for answers thereto would not be admissible on the question of what the usage was  a matter to be proved by objective and not subjective evidence. Central Radiator Co. v. Niagara Fire Insurance Co., supra; Johnson v. Hoffman, supra.
No objection was made to the court's question and, under the present state of our law, the plain error rule (R.R. 1:5-3 (c)) cannot apply in the case of evidence received without objection. Priest v. Poleshuck, 15 N.J. 557 (1954). Passing this, however, and assuming error in the judge's questions, it was harmless since, as has been pointed out, a judgment of involuntary dismissal at the end of plaintiff's case would have been justified. Willis v. Wyllys Corporation, 98 N.J.L. 180, 182 (E. & A. 1922).
The judgment is affirmed.