**J.I. HASS CO., INC.,**

v.

**GILBANE BUILDING COMPANY, a corp. in the State of Rhode Island.**

**Appeal of GILBANE BUILDING COMPANY, in No. 88–5465.**

**J.I. HASS CO., INC., Appellant in No. 88–5523,**

v.

**GILBANE BUILDING COMPANY, a corp. in the State of Rhode Island.**

Nos. 88–5465, 88–5523.

United States Court of Appeals, Third Circuit.

Argued Feb. 28, 1989.

Decided Aug. 8, 1989.

Rehearing and Rehearing In Banc Denied Oct. 18, 1989.

Milton M. Breitman (argued), Greenberg, Margolis, Ziegler, Schwartz, Dratch, Fishman, Franzblau & Falkin, P.C., Roseland, N.J., for appellant-cross appellee (Hass).

Richard L. Abramson (argued), Peckar & Abramson, P.C., River Edge, N.J., for appellee-cross appellant (Gilbane).

Before HIGGINBOTHAM, STAPLETON and COWEN, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This is both an appeal and a cross-appeal from the judgment of the district court awarding the plaintiff-appellant *quantum meruit* compensation pursuant to a jury verdict. The plaintiff-appellant contends that the district court erred in its determination of the prejudgment interest due under the award. The defendant-cross-appellant appeals from the district court's judgment on the merits of this case, contending that the district court misapplied the law and committed reversible trial errors. Upon our review of the record before us and the legal precepts involved, we find for the cross-appellant. Accordingly, we will reverse the district court's judgment and remand for a new trial.

## I.

This action arises out of a contractual dispute between a prime contractor and subcontractor, both of whom were involved in the construction of a brewery for the Miller Brewing Company ("Miller") in Trenton, Ohio. The Gilbane Building Company of Rhode Island ("Gilbane"), one of Miller's prime contractors, entered into a subcontract with the J.I. Hass Company, Inc. of New Jersey ("Hass"), a painting contractor. This subcontract, dated March 24, 1981, was written and executed by both parties and required Hass to perform painting work in certain buildings in the construction project.[1] The subcontract also contained language, standard in the construction trade, allowing Gilbane to direct Hass to perform extra work through the issuance of change orders that increased the subcontract's scope. Under these change orders, Hass was to receive additional compensation in exchange.

Section 7(b) of the parties' subcontract provided for the performance of extra work and the payment thereof as follows:

(b) No changes shall be made in the work except upon the written order of the Contractor; the amount to be paid by the Contractor or allowed by the Subcontractor by virtue of said changes to be stated in said orders. In the event of any additions, the amount of compensation to be paid, as so ordered, shall be determined as follows:

(1) By such applicable unit prices as set forth in the contract, or

(2) If no such unit prices are set forth, then by a lump sum mutually agreed upon by the Architect, General Contractor and Subcontractor, or

(3) If no such unit prices are set forth, and if the parties cannot agree upon a lump sum, then by the actual net cost in money to the Subcontractor of materials and labor ... plus compensation of 5% for overhead and 10% for profit.

Appendix ("App.") at 3378.

Pursuant to § 7(b), change order no. 1 was entered on June 1, 1981. Under that change order, Hass agreed to paint more facilities for an additional $753,000. App. at 3466. After Hass had begun performing under change order no. 1, however, a dispute arose between Gilbane and Hass as to whether certain painting of the buildings' "mechanical systems"[2] fell within the change order's scope. Gilbane directed Hass to perform the work that was disputed. Hass subsequently performed some of the work under protest, submitting a claim for compensation pursuant to the extra work provisions of the subcontract. Gilbane adhered, however, to its interpretation of change order no. 1 as providing Hass with full compensation for the extra work, and rejected Hass' claim for additional compensation.

---

1. Gilbane and Hass had also entered into a lump sum subcontract on March 23, 1981, under which Gilbane agreed to pay Hass $42,870 in consideration for Hass' painting of the Waste-water Treatment Plant. Appendix at 3368. That agreement is undisputed.

2. "Mechanical systems" is a collective reference to the heating, ventilating, and air conditioning system, fire protection system, plumbing system, electrical system, and miscellaneous metallic surfaces.

On May 13, 1983, Hass commenced this action against Gilbane in the United States District Court for New Jersey, which had diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) (1982). Hass not only advanced a claim for compensation for the contested extra work, but also sought, in the first count of its complaint, rescission of the base subcontract on the ground that no contract had formed between the parties. The matter proceeded to trial, and was submitted to the jury upon instructions and written interrogatories. The first interrogatory put to the jury asked:

1. Has plaintiff proven that there was no contract between plaintiff Hass and defendant Gilbane?

App. at 159.

At the end of the first day of deliberations, the jury submitted the following communication to the district court:

Re[garding] question number 1. We agree that the base contract existed and we agree that there was no meeting of the minds on change order number 1. Confusion arises as to the wording of question number 1. Based on what we agree on, is the answer yes or no to question number 1?

App. at 3239.

Over Gilbane's objection, the district court responded to the jury's question as follows:

Considering the evidence and the Court's instructions as a whole and considering all of the work together, you must determine as a whole whether Hass has proven that there was no contract between the plaintiff Hass and the defendant Gilbane.

App. at 3251–52.

Thereafter, the jury returned with a verdict answering the first interrogatory in the affirmative—i.e., that there was no contract between Hass and Gilbane. Consequently, the jury awarded Hass $1,461,-872.63 in *quantum meruit* compensation, the amount owed on Hass' total cost claim,[3]

including a 21% mark-up for overhead and profit. The jury also found that Gilbane was entitled to a credit of $242,251 against Hass for a "fair allowance for any defects or omissions in ... Hass' performance of the work." App. at 161.

Gilbane subsequently moved for judgment notwithstanding the verdict and, alternatively, for a new trial, remittitur, or reduction in the money judgment. The court denied Gilbane's first three motions but granted a $31,000 reduction in the award of damages. On May 25, 1988, the court entered judgment *nunc pro tunc* against Gilbane in the amount of $1,188,-621.63 plus $291,908 in pre-judgment interest for a total sum of $1,480,529.63.

On June 9, 1988, Gilbane filed its notice of appeal as to the final judgment of the district court, and on June 22, 1988, Hass filed its notice of appeal as to the district court's determination of pre-judgment interest due under the award. In addition, we granted leave on January 17, 1989 for the Building Contractors Association of New Jersey ("BCA") to file a brief in this appeal as an *amicus curiae*. We have jurisdiction pursuant to 28 U.S.C. § 1291 (1982).

## II.

Gilbane's principal argument on appeal is that there was a valid subcontract between the parties as a matter of law, irrespective of the dispute as to the scope of work under change order no. 1. On that basis, Gilbane contends that the district court erred in denying its motion for a directed verdict dismissing the first count of Hass' complaint and its motion for a judgment notwithstanding the verdict or, alternatively, for a new trial. Gilbane also contends that the district court erred in denying its motion for a new trial on the basis that the district court, through its supplemental jury instruction, had erroneously rejected the jury's initial determination of the exist-

---

3. Hass' total cost claim was $2,150,028.63, but the jury subtracted from that amount $688,156

that Gilbane had already paid to Hass. App. at 159.

ence of a contract.[4] Gilbane is joined in its contentions by the BCA.

The applicable standards of review are well settled. In reviewing a district court's denial of a directed verdict, "[w]e must determine whether, as a matter of law, the record is critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief.... [I]f the evidence is of such character that reasonable [persons], in the impartial exercise of their judgment may reach different conclusions, the [count] should be submitted to the jury." *Patzig v. O'Neil*, 577 F.2d 841, 846 (3d Cir.1978).

Next, when reviewing a district court's denial of a judgment n.o.v., we are required to review the record in this case in the light most favorable to the non-moving party. We will affirm the district court's denial of the motion "unless the record is 'critically deficient of that minimum quantity of evidence from which the jury might reasonably afford relief.'" *Link v. Mercedes–Benz of North America, Inc.*, 788 F.2d 918, 921 (3d Cir.1986) (citation omitted).

Given that the district court's denial of the motion for a new trial was based on its application of a legal precept, our review is plenary. *Honeywell v. American Standards Testing Bureau*, 851 F.2d 652, 655 (3d Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 795, 102 L.Ed.2d 787 (1989).

Finally, we review the district court's supplemental jury instruction to determine "whether, viewed in light of the evidence, the charge as a whole fairly and adequately submits the issues in this case to the jury." *Bennis v. Gable*, 823 F.2d 723, 727 (3d Cir.1987). We will reverse the district court " 'only if the instruction was capable of confusing and thereby misleading the jury.'" *Id.* (citation omitted).

### III.

Our first task upon review is to ascertain whether, as a matter of law, a contract existed between Gilbane and Hass, regardless of their dispute as to the scope of work

encompassed by change order no. 1. Since this case arises under diversity jurisdiction, we look to the substantive law of New Jersey, where the district court sits, for guidance. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

■ Under the law of New Jersey, the central query in the construction of contracts is the intent of the parties. *Kearny PBA Local 21 v. Town of Kearny*, 81 N.J. 208, 221, 405 A.2d 393, 400 (1979); *Barco Urban Renewal Corp. v. Housing Authority of City of Atlantic City*, 674 F.2d 1001, 1008 (3d Cir.1982). It is not necessarily the parties' true intent, but the intent as expressed or apparent in the writing, that controls. *Friedman v. Tappan Development Corp.*, 22 N.J. 523, 531, 126 A.2d 646, 650 (1956). Where the contract is clear and unambiguous, the determination of the parties intent is purely a question of law within the exclusive province of the trial court. *Gray v. Joseph J. Brunetti Const. Co.*, 266 F.2d 809, 813–14 (3d Cir.), *cert. denied*, 361 U.S. 826, 80 S.Ct. 74, 4 L.Ed.2d 69 (1959); *Newark Publishers' Ass'n v. Newark Typographical Union*, 22 N.J. 419, 427, 126 A.2d 348, 353 (1956).

■ Applying these legal precepts to the facts of this case, we find that Gilbane and Hass had entered a valid base subcontract on March 24, 1981, in which Gilbane had agreed to pay Hass $295,000 in consideration for Hass' painting the architectural and structural surfaces of the Glass Warehouse, Office Building, Powerhouse and Brewhouse facilities in the brewery project. The manifestation of the parties' intent to contract was expressed in the unambiguous language of that contract. Contrary to Hass' assertion that the scope of work under the base subcontract was too vague for there to have been a meeting of the minds on the subject, the subcontract clearly expressed that all painting was to be done "in strict accordance with the [p]lans and [s]pecifications in Rider 'A'" to the

---

**4.** Gilbane also argues on appeal that the district court abused its discretion in admitting certain evidence and in awarding Hass prejudgment interest. Because we are able to dispose of this case on the basis of Gilbane's principal argument, we need not reach these contentions.

subcontract. App. at 3377. Rider A incorporated Section 9F of the second volume of the master specifications, which required painting to be performed in the accordance with the Room Finish Schedules. App. at 3337. These schedules explicitly required the painting of architectural and structural surfaces. App. at 3333, 4107–10. Therefore, we hold that there was a valid base subcontract as a matter of law.

The district court should have entered a directed verdict on the first count of Hass' complaint since the base subcontract clearly existed and no question of fact remained on this issue for jury determination. The district court, however, sent the issue to the jury, which initially found that a base subcontract existed between Hass and Gilbane. The court then compounded its error by not accepting the jury's finding.

Instead of accepting the jury's finding of fact as to the existence of a valid base subcontract, the district court issued supplemental instructions that required the jury to consider the disputed scope of change order no. 1 together with the base subcontract before deciding upon the validity of the subcontract. By doing so, the court erroneously made the "meeting of the minds" standard that is appropriate in determining contract formation conditional upon the parties' having the same understanding of the scope of work under change order no. 1. The New Jersey courts have long stated that the doctrine of mutual assent cannot be misapplied "to impose the requisite that there is no contract unless both parties understood the terms alike, regardless of the expressions they manifested." *Leitner v. Braen*, 51 N.J.Super. 31, 38, 143 A.2d 256, 260 (App. Div.1958). Since the court's supplemental instructions may have misled the jury into thinking that the existence of a base subcontract was impossible if the parties disputed the scope of work under change order no. 1, we conclude that the district court committed reversible error.[5]

■ Upon remand, the jury should be instructed only to determine whether Hass performed work that went beyond the scope of change order no. 1 and, if so, what is Hass' appropriate compensation. While the jury initially found that there was no "meeting of the minds" between the parties as to the scope of work under change order no. 1, we find that Hass waived its right to rescind that change order. Under New Jersey law, parties can elect to affirm an otherwise invalid agreement by their conduct, thus barring either party from later seeking rescission. *Merchants Indemnity Corp. v. Eggleston*, 37 N.J. 114, 137, 179 A.2d 505, 513 (1962). Our review of the record shows that Hass, through its conduct, elected to affirm change order no. 1.

On January 27, 1982, Hass wrote a letter to Gilbane, stating that Hass had been directed by Gilbane's representative to paint the sprinkler pipes in the Packaging and Warehouse Building, and that Hass considered such work to be outside of the scope of change order no. 1. Hass went on to state that it would perform the work under protest and without prejudice to its right to claim additional compensation. App. at 3513. By letter dated August 12, 1982, Hass transmitted four invoices to Gilbane for its painting of the sprinkler pipes and other disputed building mechanical systems, totalling $144,682. App. at 3529. Each of these invoices was based on the actual costs incurred by Hass for labor and materials, plus a 15 percent mark-up for overhead and profit, as prescribed under § 7(b)(3) of the base subcontract. App. at 3530–33.

The above record shows that Hass, instead of rescinding change order no. 1, affirmed its validity by continuing to work under the change order and by seeking additional compensation for the disputed work. Therefore, we hold that Hass' only claim to additional compensation is for any work that Hass performed that exceeded the scope of change order no. 1. Hass contends that its painting of the canopy walkways, platforms and catwalk on the fermenting tank in the Cold Service Area,

---

**5.** The district court also committed reversible error in not granting Gilbane's motion for a new trial on the basis that a base subcontract existed between the parties as a matter of law.

as well as its painting of ductwork in the Brewhouse and sprinkler pipes in the Packaging and Warehouse Building, is work that exceeded the scope of the change order. Gilbane, in rejoinder, argues that the Room Finish Schedules incorporated in change order no. 1 unambiguously obligated Hass to paint the building mechanical systems. Therefore, Gilbane asserts that we must find, as a matter of law, that Hass was required to do the work at issue.

■ Upon our review of the record, we find the Room Finish Schedule for the Cold Service Area clearly required, under the heading of "Specific Surfaces to be Painted," that Hass paint such structural surfaces as platforms, walkways and catwalks on the fermenting tank. App. at 4111. Moreover, we find the Room Finish Schedule for the Packaging and Warehouse Building clearly prescribed, under the subheading of "Process and Building Piping," that Hass "paint exposed noninsulated ferrous metal," app. at 4114, which undoubtedly includes sprinkler pipes. Given the lack of ambiguity with respect to Hass' obligation to paint the platforms, catwalks and walkways on the fermenting tank in the Cold Service Area, as well as the sprinkler pipes in the Packaging and Warehouse Building, we find, as a matter of law, that Hass was obligated to paint these surfaces. Accordingly, Hass is not entitled to any additional compensation with respect to that work.

We find, however, no clear reference in the Room Finish Schedules under change order no. 1 to Hass' painting of ductwork in the Brewhouse. Indeed, the only reference to painting in the Brewhouse is found in the base subcontract. Yet the Room Finish Schedule for the Brewhouse under the base subcontract also makes no clear reference to any painting by Hass of ductwork. Given the ambiguity that exists in the contract as to whether Hass' painting of ductwork in the Brewhouse was within the scope of work under change order no. 1, the jury must decide this issue. *See Bedrock Foundations, Inc. v. Geo. H. Brewster & Son, Inc.*, 31 N.J. 124, 133, 155 A.2d 536, 541 (1959) (while construction of a written contract is ordinarily a matter of law for the court, where its meaning is unclear and may depend on disputed extraneous testimony, submission to the jury may be required).

If the jury finds that Hass, in painting the ductwork in the Brewhouse, performed work exceeding the scope of change order no. 1, then the jury must decide whether the parties intended that such "excess" work be treated as extra work *under* the subcontract or, instead, be treated as work done *outside* the subcontract.[6] If the former, then Hass is to be remunerated under the formula prescribed in § 7(b)(3) of the subcontract. If the latter, then Hass is to be remunerated in *quantum meruit* without reference to the subcontract. In any event, because Hass may have performed work beyond the scope of change order no. 1, a judgment notwithstanding the verdict is not warranted in this case.

### IV.

For the foregoing reasons, we will vacate the judgment of the district court, and will remand for a new trial consistent with this opinion.[7]

---

6. The intent of the parties in this matter is a question for the jury since there is no clear language in the contract as to how work done in excess of a change order is to be remunerated.

7. Given our decision to vacate the judgment of the district court, we need not reach the contention raised by Hass in its appeal, *viz.,* whether the district court erred in its calculation of prejudgment interest.