968 A.2d 1242 (2009)
407 N.J. Super. 21
PAGNANI-BRAGA-KIMMEL UROLOGIC ASSOC., P.A., Plaintiff,
v.
Lynne C. CHAPPELL and David Chappell, jointly, severally, and in the alternative, Defendants.
No. DC-4740-08
Superior Court of New Jersey, Law Division, Special Civil Part, Atlantic County.
Decided November 10, 2008.
*1243 Ronald MacFarland, Woodbine, for plaintiff.
Lynne C. Chappell, defendant, pro se.
KANE, J.S.C.
On October 30, 2006, Lynne C. Chappell (hereinafter "defendant") was diagnosed with a kidney infection by her primary physician, and sent to Shore Memorial Hospital (hereinafter "Shore Memorial") in Somers Point, New Jersey. Upon entering Shore Memorial, defendant presented her insurance card to a *1244 staff member and was told that her insurance would cover the treatment, except certain additional hospital charges. Shore Memorial is considered an "in-network" service provider under defendant's insurance policy. During defendant's conversation with Shore Memorial's staff, she was not informed that her surgeon, Dr. Alex Pagnani (hereinafter "plaintiff), was not employed by the hospital and may not accept her insurance. Also, she was not informed that she may be billed separately by plaintiff. Defendant underwent various tests at Shore Memorial, and the hospital staff concluded she had a kidney stone requiring emergency surgery.
The following day, October 31, 2006, defendant returned to Shore Memorial and consulted with plaintiff before the surgery. Plaintiff did not inform defendant that his fees were separate from that of Shore Memorial or that he does not accept defendant's insurance.
Plaintiff successfully performed the surgery on defendant on October 31, 2006, at Shore Memorial. Shortly after the surgery, defendant returned to plaintiff for a follow up, at which time, she discovered that he did not accept her insurance plan. Defendant immediately cancelled her appointment with plaintiff and made an appointment for a follow-up with a doctor who did accept her insurance. Shortly thereafter, defendant received a bill from plaintiff for his services. Plaintiff and Shore Memorial both consider plaintiffs work as separate and independent from that of the hospital. Plaintiffs complaint seeks to recover for the services he provided to defendant.
The issue presented to the court is whether a person who presents herself to a hospital, and is told her insurance carrier is accepted, is to reasonably assume that she may be liable for the separate charges of an independent doctor who performs services on behalf of the hospital.

1. Quantum Meruit
Plaintiff seeks to collect his fees under a quantum meruit theory, alleging defendant would be unjustly enriched if she were allowed to accept his services without payment. Plaintiffs argument ignores the fact that Shore Memorial was also unjustly enriched by plaintiffs services and is better suited to absorb the cost. Unjust enrichment arises where one party fulfills the duty of another and the benefited party does not compensate the burdened party. St. Barnabas Med. Ctr. v. County of Essex, 111 N.J. 67, 75-76, 543 A.2d 34 (1988). It is well settled that hospitals have a duty, under state law, to accept and treat all patients. St. Barnabas, supra, 111 N.J. at 75-76, 543 A.2d 34 ("the [legislature has prescribed, inter alia, that `access to quality health care shall not be denied to residents of the State because of their inability to pay for the care.'") (quoting L. 1986, c. 204, § 1).
The Legislature has taken steps to alleviate the financial burdens resulting from this onerous obligation of hospitals. Id. at 76, 543 A.2d 34. Almost thirty years ago, the Legislature created the Hospital Rate-Setting Commission to consider the costs involved in providing health care and established a scheme of rate regulation for New Jersey hospitals. Ibid, (citing N.J.S.A 26:2(h)-4.1, -18(d)); see generally Riverside Gen. Hosp. v. N.J. Hosp. Rate Setting Comm'n, 98 N.J. 458, 461-64, 487 A.2d 714 (1985) (explaining rate setting process). The Legislature also instituted the Uncompensated Care Trust Fund, which seeks to spread the costs of health care by increasing the rates charged to payers at all state hospitals. St. Barnabas, supra, 111 N.J. at 76, 543 A.2d 34. In creating such regulations, the Legislature "has clearly established as the public policy of this State a system that imposes the costs of ... medical care ... on `all payers *1245 of health care services.'" Id. at 83, 543 A.2d 34 (quoting L. 1986, c. 204 § 1).
In the instant case, Shore Memorial had a duty to treat defendant when she entered the hospital and sought treatment for her kidney stone. Plaintiff, a doctor not employed by Shore Memorial, fulfilled the hospital's duty when he performed surgery upon defendant. Defendant concedes that she received the benefit of plaintiffs services. However, Shore Memorial also received the benefit of plaintiffs services since its duty to treat defendant was fulfilled by an independent doctor. See St. Barnabas, supra, 111 N.J. at 76, 543 A.2d 34.
Plaintiff testified that Shore Memorial did not pay him for treating defendant. Shore Memorial is located in New Jersey and is subject to the rate setting scheme established by the Hospital Rate-Setting Commission. The rate setting scheme was crafted to protect hospitals like Shore Memorial by setting the rates for medical services high enough to compensate for those cases in which the hospital is never paid. Defendant accepted treatment at Shore Memorial only after she was told her insurance would cover everything except certain additional hospital charges. Defendant's testimony indicated she would not have accepted plaintiffs services if she were told she would have incurred additional liability. Since Shore Memorial is assisted by the Legislature's rate setting scheme, it is better prepared to bear the loss. As such, this court holds that plaintiffs proper recourse is against Shore Memorial and plaintiffs suit against defendant is hereby dismissed.

2. Mutual Assent
Plaintiff cannot collect his fees from defendant under a contract theory because plaintiffs fees were not contemplated within the agreement between defendant and Shore Memorial. A contract is an agreement resulting in an obligation enforceable at law. Johnson & Johnson v. Charmley Drug Co., 11 N.J. 526, 539, 95 A.2d 391 (1953). "If this agreement is to be bilateral, `the offeror and offeree, alike, must express agreement as to every term of the contract.'" Johnson & Johnson, supra, 11 N.J. at 539, 95 A.2d 391 (quoting Corbin on Contracts §§ 9, 28, 29, 82, 83). The offeror will express agreement in the offer, and the offeree will express agreement in the acceptance. Ibid. This expression of agreement between the parties is known as mutual assent. Id. at 538, 95 A.2d 391.
A contract does not come into being unless there is a manifestation of mutual assent by the parties to the same terms. Ibid. The court will view the mutual assent of the parties only as it is manifested from one party to the other. Leitner v. Braen, 51 N.J.Super. 31, 38, 143 A.2d 256 (App.Div.1958). The obligations of each party depend not on the subjective intent of the parties, but rather the expressed intent of the parties. Ibid. (citing Corn Exch. Nat'l Bank & Trust Co. of Phil. v. Taubel, 113 N.J.L. 605, 609, 175 A 55 (E. & A.1934)); see also Van Name v. Fed. Deposit Ins. Corp., 130 N.J. Eq. 433, 447, 23 A.2d 261 (Ch.1941), aff'd 132 N.J. Eq. 302, 28 A.2d 210 (E. & A.1942) (holding a "meeting of the minds" can only mean the agreement reached by the parties as expressed). When looking for mutual assent, a court will take these outward expressions and ask "what meaning the words should have conveyed to a reasonable person cognizant of the relationship between the parties and all of the antecedent and surrounding facts and circumstances." Esslinger's Inc. v. Alachnowicz, 68 N.J.Super. 339, 344, 172 A.2d 433 (App. Div.1961) (citing Broad St. Nat'l Bank of Trenton v. Collier, 112 N.J.L. 41, 44, 169 A. 552 (Sup.Ct.1933), aff'd, 113 N.J.L. 303, *1246 174 A. 900 (E. & A.1934); 1 Williston on Contracts § 21 (1957); Ashley, "Mutual Assent In Contract," 3 Colum. L.Rev. 71 (1903)) (emphasis added); see also Cohn v. Fisher, 118 N.J.Super. 286, 291, 287 A.2d 222 (Law Div.1972). Cf., Savarese v. Pyrene Mfg. Co., 9 N.J. 595, 89 A.2d 237 (1952); Bird v. J.L. Prescott Co., 89 N.J.L. 591, 99 A. 380 (E. & A.1916).
Here, this court finds the expressed intentions between the Shore Memorial staff and defendant to include Shore Memorial's offer to render medical services and defendant's acceptance of the offer on the condition that she assume liability only for her co-pay and certain additional hospital charges. Defendant entered into a contract with Shore Memorial to have surgery performed on her kidney stone. She testified that she entered Shore Memorial on October 30, 2006, and presented her insurance card to the hospital staff. She was informed that her insurance was accepted at Shore Memorial but that certain hospital charges may not be covered.[1] She stated that she was never informed that her surgeon was an independent contractor of the hospital who did not accept her insurance.[2] Defendant did not consent to assume liability of a bill other than that of Shore Memorial. Given defendant's testimony, a reasonable person in her position would have understood she assumed liability only for her insurance co-pay and the additional hospital charges over and above what her insurance covered. See Esslinger's Inc., supra, 68 N.J.Super. at 344, 172 A.2d 433. A reasonable person in defendant's position would not have understood her obligations to include a separate bill from an independent doctor. Ibid. The contract between defendant and Shore Memorial lacked mutual assent concerning defendant's liability to pay extra fees to an independent doctor. Leitner, supra, 51 N.J.Super. at 38, 143 A.2d 256. Defendant did not contract to assume liability for an independent doctor's bill. Therefore, defendant is not legally obligated to pay plaintiffs fees pursuant to defendant's contract with Shore Memorial.
Furthermore, there was no separate contract between the parties which would obligate defendant to pay plaintiffs fees. Plaintiff testified there was never an agreement with defendant concerning the payment of his fees, nor did he ever tell, defendant his services were independent from Shore Memorial. Since there was no agreement between the parties about the services and payment, there could not have been any mutual assent concerning such matters. Johnson & Johnson, supra, 11 N.J. at 538, 95 A.2d 391. Without mutual assent, there could not have been a contract. Ibid. Consequently, defendant is not legally obligated to pay plaintiff's fees pursuant to any express or implied contract between plaintiff and defendant.
For the reasons explained above, plaintiff may not separately bill a patient for services rendered without explicit disclosure of both his particular status at the hospital and that acceptance of his services *1247 would result in a separate bill that would incur additional charges.
The complaint is dismissed.
NOTES
[1] The written contract between defendant and Shore Memorial states that the patient is responsible to pay the balance of the patient's account not paid by patient's insurance carrier. Defendant testified that she did incur extra hospital charges and was paying them at the time of trial. However, the contract is barren of any indication that the patient may have to incur liability for the fees of an independent doctor who is not paid by Shore Memorial.
[2] Plaintiff testified he was not present during defendant's discussions with Shore Memorial and so could not dispute what was represented by Shore Memorial's staff. Plaintiff also testified that he was unaware of Shore Memorial's policy about what representations are made to incoming patients.